**UNITED STATES, Appellant,**

v.

**Darrian D. ALLEN, Appellee.**

No. 98–CO–1580.

District of Columbia Court of Appeals.

Argued Jan. 13, 2000.

Decided May 18, 2000.

Florence Pan, Assistant United States Attorney, with whom Wilma A. Lewis, United States Attorney, John R. Fisher, Mary–Patrice Brown, and Lynn C. Holliday, Assistant United States Attorneys, were on the brief, for appellant.

Leslie B. Holt, Silver Springs, MD, appointed by the court, for appellee.

Sandra K. Levick, Public Defender Service, with whom James Klein, Public Defender Service, was on the brief, for Public Defender Service, amicus curiae.

Before STEADMAN, RUIZ and REID, Associate Judges.

REID, Associate Judge:

Appellee Darrian D. Allen was convicted of the lesser included offense of possession of cocaine, a violation of D.C.Code § 33–541(d) (1998); but the jury did not reach a verdict on the greater offense with which he was charged, possession with intent to distribute cocaine, a violation of D.C.Code § 33–541(a)(1) (1998). After accepting the verdict on the lesser included offense, the trial judge instructed the jury to continue deliberations regarding the greater offense. Eventually, the jury announced that it had made "a reasonable effort to reach a conclusion" and that additional deliberation would not result in a verdict on the greater offense. At the request of Allen, and despite the objection of the government, the trial judge declared a mistrial as to the greater offense. Later, the government decided to retry Allen on the greater charge. Allen sought to preclude retrial, and ultimately, the trial court determined that the Double Jeopardy Clause of the Fifth Amendment to the Constitution of the United States [1] prohibited retrial of Allen on the greater offense. The government filed a timely appeal. We reverse the order of the trial court. Further, we hold that the Double Jeopardy Clause of the Fifth Amendment is not a

---

1. The Fifth Amendment Double Jeopardy Clause reads: "[N]or shall any person be sub- ject for the same offense to be twice put in jeopardy of life or limb."

bar to retrial of a defendant, under a continuing jeopardy theory, where the jury expressly states that it is unable to reach agreement on the greater offense of possession with intent to distribute a controlled substance, and the trial court has declared a mistrial as to the greater offense after the jury finds the defendant guilty of the lesser offense of possession. Accordingly, we remand this matter to the trial court for further proceedings consistent with this opinion.

## FACTUAL SUMMARY

On February 12, 1998, Allen was indicted on one count of possession with intent to distribute cocaine. He was tried by jury on March 12 and 13, 1998. The government's evidence, presented through the testimony of police officers, showed that on February 7, 1998, around 2:30 a.m., two Metropolitan Police Department officers received a radio broadcast concerning a robbery at 18th and Columbia Road, N.W. They responded to the radio broadcast and were met by the robbery victim who informed the officers that he had been robbed at the Lion's Den Restaurant and Bar, located at 2427 18th Street, N.W. The officers proceeded to the Lion's Den, accompanied by the victim.

Upon entering the Lion's Den, one officer observed a person, later identified as Allen, sitting down at a table. Another man was standing next to Allen. The officer watched while the other man handed Allen a ten dollar bill. Allen was in the process of passing something to him when the other man saw the officer. The other man dropped the ten dollar bill and disappeared into the crowd at the restaurant. The officer continued to watch Allen who had a sandwich bag in his hand, and then walked over to him. The officer discovered that the sandwich bag contained eighty-six ziplock bags of a substance later identified as cocaine base, with a street value of about $1,720.00. The sum of $290.00 was found on Allen's person.

As part of his defense, Allen testified that a friend gave him three hundred dollars with which to purchase cocaine for a party and a trip to Atlantic City, New Jersey. Allen went to the Lion's Den where he saw someone from whom he had previously purchased drugs. Since Allen wanted to test the cocaine before buying approximately one hundred and fifty dollars worth of the drug, he decided to make a ten dollar purchase. He was in the process of removing one packet from the seller's bag when a police officer flashed a light in his eyes and arrested him. Allen denied that the eighty-six bags of crack cocaine belonged to him.

The trial judge charged the jury on the offense of possession with intent to distribute, as well as the lesser included offense of possession. Furthermore, the trial judge gave the jury a reasonable efforts instruction:

[W]hen you consider your deliberations, you should go back and consider first whether the defendant is guilty of possession with intent to distribute cocaine.

If you find the defendant guilty, do not go on and consider the lesser offense.

If you find the defendant was not guilty, or if after making all reasonable efforts to reach a verdict you are not able to do so, you are allowed to consider the lesser offense of possession—simple possession of cocaine.

After about one-and-one half hours of deliberation on May 13, 1998, the trial judge received a note from the jury saying, "Dear Judge, we are stuck on what is reasonable efforts. How long do we have to go over the first charge before we can move on to the lesser?" Following a discussion between the trial judge and counsel for Allen and the government, the judge told the jury:

It's important that you try to resolve the greater charge before you go onto the lesser charge. There is no fixed time. And—but if you can resolve the

lead charge, I'd like you to work hard to do that, to resolve it one way or another.

[I]f you—after collectively agreeing ... that you've expended all reasonable efforts ... you can obviously ... move onto the other charge. But you have to be in agreement on that.

After taking lunch, the jury deliberated for approximately twenty more minutes before sending the trial judge a note which read: "We have a verdict." When the trial judge asked the jury what verdict it had rendered on the charge of possession with the intent to distribute cocaine, the foreperson replied: "[We] didn't come to a unanimous decision on that one." The judge then inquired whether the jury had reached a unanimous verdict on the possession charge. The foreperson responded in the affirmative and stated that the verdict was "guilty." The judge held a bench conference with counsel and said: "I'm not really sure how to proceed on this particular matter.... I could tell them to go back and consider the other charge." Counsel for Allen objected on the ground that a verdict had been rendered in the matter and the jury should be discharged. The prosecutor disagreed and argued that there was "unfinished business" in that no verdict had been given as to the charge of possession with intent to distribute cocaine. Therefore, the jury should resume deliberations on that charge and make "reasonable efforts" to reach a verdict. The trial judge asserted that he had expected the jury to say guilty or not guilty on the greater offense. When the trial court asked defense counsel whether he was asking for a mistrial, counsel replied: "Your Honor, ... I want the Court to recognize that there is a verdict in this case." The trial court decided to send the jury back for further deliberation on the greater offense.

The jury engaged in another hour of deliberation on May 13th, and at the end of the day asked for further instruction on reasonable doubt. The jury was rein-structed on reasonable doubt on the morning of May 14th, and after another hour of deliberation, they sent a note to the trial judge declaring:

We have expended what we unanimously agree to be a reasonable effort to reach a conclusion.

After additional instruction, we are unable to agree to a verdict on the first count.

We strongly believe that additional effort will not change that.

Defense counsel asked for a mistrial with respect to the greater offense. The government requested the *Winters'* anti-deadlock instruction.[2] The court decided to declare a mistrial with respect to the greater offense and discharged the jury.

Two weeks later, the government announced that it would retry Allen on the greater offense. Consequently, the trial judge refused to enter judgment on the lesser included offense of possession. Allen sought reconsideration, which the government opposed. After a hearing on the motion to reconsider, the trial court concluded that the government could not retry Allen on the charge of possession with intent to distribute cocaine, and subsequently, the trial judge sentenced Allen to one hundred and eighty days of incarceration on the possession conviction. Pursuant to § 23–104(c), the government appealed the order of the trial court dismissing the indictment on possession with intent to distribute on the ground that Allen could not be retried on the greater offense.

## ANALYSIS

The government contends that neither the Double Jeopardy Clause of the Fifth Amendment to the Constitution of the United States, nor the reasonable efforts instruction given to the jury in this case, preclude the retrial of Allen on the greater offense of possession with intent to distribute cocaine, because there was a hung jury

---

2. *Winters v. United States,* 317 A.2d 530 (D.C. 1974) (en banc).

on that charge. Allen argues that he was acquitted of the greater offense, and thus, cannot be retried. The Public Defender Service ("PDS"), as amicus curiae, maintains, *inter alia*, that Allen was implicitly acquitted of the greater offense, and that this was not a hung jury case. In addition, PDS asserts that jurisdictions which give the reasonable efforts instruction have concluded that a verdict on a lesser included offense terminates the case.

■ When confronted with an issue of law, as in this case, "[w]e review the trial court's legal conclusions *de novo*." *Budoo v. United States*, 677 A.2d 51, 54 (D.C. 1996). In approaching the legal issue of whether Allen may be retried on the greater offense of possession with intent to distribute cocaine, without contravening the Double Jeopardy Clause, after he was convicted of the lesser included offense, and after the jury declared that it could not reach a unanimous verdict on the greater offense, prompting the trial court to grant defense counsel's motion for a mistrial, we first set forth some general principles that have governed the historic development of double jeopardy jurisprudence in this country.

■ American constitutional double jeopardy principles grew out of the English common law heritage. *See United States v. Wilson*, 420 U.S. 332, 339–42, 95 S.Ct. 1013, 43 L.Ed.2d 232 (1975). Blackstone spoke of double jeopardy as embodying a " 'universal maxim of the common law of England, that no man is to be brought into the jeopardy of his life more than once for the same offense.' " *Id.* at 340, 95 S.Ct. 1013 (quoting 4 Blackstone Commentaries at 335–36). As American constitutional law developed, the Supreme Court of the United States articulated three protections afforded by the Fifth Amendment Double Jeopardy Clause:

> "It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction.

And it protects against multiple punishments for the same offense."

*Id.* at 343, 95 S.Ct. 1013 (quoting *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969)). In explicating these protections, the Supreme Court stated in *Wilson, supra:*

> When a defendant has been once convicted and punished for a particular crime, principles of fairness and finality require that he not be subjected to the possibility of further punishment by being again tried or sentenced for the same offense. *Ex Parte Lange*, 18 Wall. 161 [21 L.Ed. 872] (1874); *In re Nielsen*, 131 U.S. 176 [9 S.Ct. 672, 33 L.Ed. 118] (1889).

> When a defendant has been acquitted of an offense, the Clause guarantees that the State shall not be permitted to make repeated attempts to convict him, "thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty." *Green v. United States*, 355 U.S. 184, 187–88 [78 S.Ct. 221, 2 L.Ed.2d 199] (1957).

*Id.* To state the principle succinctly, the Fifth Amendment Double Jeopardy Clause safeguards a defendant from multiple trials or successive prosecutions or multiple punishments for the same offense. *See Lindsay v. United States*, 520 A.2d 1059, 1061 (D.C.1987).

■ An exception to the protections of the Double Jeopardy Clause may be permitted if the trial court declares a mistrial. The Government may retry a defendant after a mistrial, over the defendant's objection, "only where 'there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated.' " *Wilson, supra*, 420 U.S. at 344, 95 S.Ct. 1013 (quoting *United States v. Perez*, 22 U.S. (9 Wheat.) 579, 580, 6 L.Ed. 165

(1824) (footnote omitted)).[3] Where there has been an acquittal, however, the Double Jeopardy Clause bars retrial. *See United States v. Ball,* 163 U.S. 662, 671, 16 S.Ct. 1192, 41 L.Ed. 300 (1896). The basis for this distinction lies in the concept of "continuing jeopardy." Whereas an acquittal terminates jeopardy, a properly granted mistrial does not. *See Richardson v. United States,* 468 U.S. 317, 325, 104 S.Ct. 3081, 82 L.Ed.2d 242 (1984) ("the protection of the Double Jeopardy Clause by its terms applies only if there has been some event, such as an acquittal, which terminates the original jeopardy ... and we hold ... that the failure of the jury to reach a verdict is not an event which terminates jeopardy"). As long as the defendant remains in jeopardy, the government may retry him or her without violating the constitutional prohibition against successive prosecutions. *See Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932).

With these general principles in mind, we turn next to specific Supreme Court cases which may assist us in resolving the following related issues raised by the instant case: (1) Should the jury's action in this case with respect to the greater offense of possession with intent to distribute be described as "a hung jury," or as "an implicit acquittal"?; and (2) Did the trial court's acceptance of a verdict on the lesser included offense of possession implicate double jeopardy principles and preclude retrial on the greater offense where the jury, which had been given a reasonable efforts instruction, before and during deliberation, stated it could not reach a unanimous verdict on the greater offense?

Early in its double jeopardy jurisprudence, the Supreme Court concluded that if a jury convicts on some counts but is silent as to the others, the discharge of the jury is tantamount to an acquittal, but if the jury formally disagrees on the verdict for an offense, retrial is not precluded:

Doubtless, where a jury, although convicting as to some, [is] silent as to other counts in an indictment, and are discharged without the consent of the accused ..., the effect of such discharge is "equivalent to acquittal," because, as the record affords no adequate legal cause for the discharge of the jury, any further attempt to prosecute would amount to a second jeopardy, as to the charge with reference to which the jury has been silent. But such obviously is not the case, where a jury [has] not been silent as to a particular count, but where, on the contrary, a disagreement is formally entered on the record. The effect of such entry justifies the discharge of the jury, and therefore a subsequent prosecution for the offence as to which the jury has disagreed and on account of which it has been regularly discharged, would not constitute second jeopardy.

*Selvester v. United States,* 170 U.S. 262, 269, 18 S.Ct. 580, 42 L.Ed. 1029 (1898). The court emphasized that: "[I]f ... after the case had been submitted to the jury, they reported their inability to agree, and the court made record of it and discharged them, such discharge would not be equivalent to an acquittal, since it would not bar the further prosecution." *Id.* at 270, 18 S.Ct. 580; *see also Wade v. Hunter,* 336 U.S. 684, 688–89, 69 S.Ct. 834, 93 L.Ed. 974 (1949). In a subsequent jury "inability to agree" case, where the trial court granted a mistrial with respect to the disagreed upon counts, *Richardson, supra,* the Supreme Court "reaffirm[ed] the proposition that a trial court's declaration of a mistrial following a hung jury is not an event that terminates the original jeopardy to which petitioner was subjected." *Id.* at 326, 104 S.Ct. 3081. The Supreme Court summarized its rationale for this position: "The Government, like the defendant, is entitled to resolution of the case by verdict from the jury, and jeopardy does not terminate

---

**3.** A hung jury has been said to be the "prototypical example" of manifest necessity. *Ore-* *gon v. Kennedy,* 456 U.S. 667, 672, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982).

when the jury is discharged because it is unable to agree." *Id.*

In contrast to cases where the jury is unable to agree, and its disagreement is entered on the record, are those cases where a jury is completely silent as to certain offenses with which a defendant has been charged. The jury in *Green v. United States,* 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957), found the defendant guilty of arson and second degree murder, but was completely silent regarding first degree murder. The defendant was tried again for first degree murder, but he argued that the Double Jeopardy Clause prevented his retrial. The Supreme Court agreed, saying:

> When given the choice between finding him guilty of either first or second degree murder it chose the latter. In this situation the great majority of cases in this country have regarded the jury's verdict as an implicit acquittal on the charge of first degree murder.[ ] But the result in this case need not rest alone on the assumption, which we believe legitimate, that the jury for one reason or another acquitted Green of murder in the first degree. For here, the jury was dismissed without returning any express verdict on that charge and without Green's consent. Yet it was given a full opportunity to return a verdict and no extraordinary circumstances appeared which prevented it from doing so. Therefore it seems clear, under established principles of former jeopardy, that Green's jeopardy for first degree murder came to an end when the jury was discharged so that he could not be retried for that offense.

*Id.* at 190–91, 78 S.Ct. 221 (citing *Wade, supra,* 336 U.S. at 684, 69 S.Ct. 834) (footnote omitted). Thirteen years after *Green,* the Supreme Court decided *Price v. Georgia,* 398 U.S. 323, 90 S.Ct. 1757, 26 L.Ed.2d 300 (1970), a case in which the jury rendered a guilty verdict concerning voluntary manslaughter, but was completely silent as to the charge of murder. The voluntary manslaughter conviction, for which the defendant had been sentenced to ten to fifteen years in prison, was reversed due to a trial court jury instruction error. The government retried the defendant on both murder and the lesser included offense of voluntary manslaughter. The Supreme Court reversed and reiterated that: "[J]eopardy for an offense [does not] continue[ ] after an acquittal, whether that acquittal is express or implied by a conviction on a lesser included offense when the jury was given a full opportunity [ ] to return a verdict on the greater charge." *Price, supra,* 398 U.S. at 329, 90 S.Ct. 1757 (footnote omitted).

■ Although the Supreme Court has not squarely ruled on the issue before us, involving retrial after the jury has expressed an inability to agree on the greater charge but has convicted on the lesser included charge, our review of the hung jury and implicit acquittal Supreme Court cases set forth above leads us to the conclusion, absent any impact of the reasonable efforts instruction, an issue which we put to the side momentarily, that Allen's case is controlled by the hung jury principles rather than those governing an implicit acquittal. In the implicit acquittal cases, the jury is completely silent as to its verdict on the particular charge at issue—that is, there is no record of the jury's inability to agree on that charge. *See Selvester, supra; Wade, supra.* In the hung jury cases, the jury's inability to agree expressly appears on the record. *Id.* Here, the jury was not silent; it reported its inability to agree twice. Before advising the trial judge of its verdict on the possession charge, the jury foreperson stated, in response to the judge's question as to the verdict on the possession with intent to distribute charge: "We did not come to a unanimous decision on that one." When the jury had deliberated for at least another hour, the foreperson sent a note to the trial judge, stating: "After additional instruction, we are unable to agree to a verdict on the first count." Following the

second statement of inability to agree on the greater offense, defense counsel requested a mistrial, which ultimately was granted. Thus, this is not a case where, as in *Green, supra,* "the jury was dismissed without returning any express verdict on [the] charge [at issue] and without [Allen's] consent." 355 U.S. at 191, 78 S.Ct. 221. By requesting a mistrial, Allen consented to the jury's dismissal. Significantly, under *Richardson, supra,* "a trial court's declaration of a mistrial following a hung jury is not an event that terminates the original jeopardy to which petitioner was subjected." 468 U.S. at 326, 104 S.Ct. 3081.

■ The principle, that a mistrial after a hung jury does not terminate original jeopardy, recognizes that "[t]he Government, like the defendant, is entitled to resolution of the case by verdict from the jury, and jeopardy does not terminate when the jury is discharged because it is unable to agree." *Id.; see also Ohio v. Johnson,* 467 U.S. 493, 502, 104 S.Ct. 2536, 81 L.Ed.2d 425 (1984) (trial court's dismissal of charges of murder and aggravated robbery after accepting guilty pleas to involuntary manslaughter and grand theft reversed: "Notwithstanding the trial court's acceptance of respondent's guilty pleas, respondent should not be entitled to use the Double Jeopardy Clause as a sword to prevent the State from completing its prosecution on the remaining charges."). As the Supreme Court recognized, "the Government [has] the right to retry a defendant after a mistrial ... where ... 'the ends of public justice would otherwise be defeated.'" *Wilson, supra,* 420 U.S. at 344, 95 S.Ct. 1013 (quoting *Perez, supra,* 22 U.S. (9 Wheat.) at 580, 6 L.Ed. 165) (footnote omitted). Without an express jury verdict on the more serious crime of possession with intent to distribute cocaine, the ends of public justice would be defeated since citizens are entitled to a resolution of an indictment charging an individual with the serious crime of possession with intent to distribute cocaine. In that regard, PDS argues, with-

out citation to authority, that "the accused's interest in avoiding a second trial far outweighs the government's interest in a second prosecution." However, in *Wilson, supra,* the Supreme Court balanced the accused's interest against the government's, and found that the scales tipped in favor of the government's interest in the ends of public justice.

Double jeopardy principles generally have not prevented retrial of a defendant in state courts where the defendant was retried on a greater offense after the jury was unable to reach a verdict and the trial court declared a mistrial at the defendant's request. See, for example, *Eccles v. State,* 59 Md.App. 554, 476 A.2d 1183 (1984), where the defendant was retried on a charge of attempted second degree rape after being convicted of a fourth degree sexual offense. There the Maryland court stated:

> The case before us ... does not fit precisely the mold of *Green* [, *supra* ]. Here, the jury was not silent as to the charge of second degree rape, but the court was told by a note from the jury that it was unable to reach a verdict as to that offense. Additionally, the jury was not discharged without the consent of the accused, but the discharge was at his express direction, based upon his motion for mistrial. Under these facts, one cannot reasonably conclude that appellant was "implicitly acquitted" of second degree rape.

*Id.* at 1185. A later decision from the Maryland Court of Special Appeals stressed that the majority of state courts have reached a similar conclusion:

> The case law from around the country is completely in line with this principle that a retrial on a greater, inclusive offense, following a declaration of mistrial because of a hung jury, is not barred by double jeopardy principles notwithstanding the fact that a guilty verdict was accepted and a sentence imposed with respect to a lesser, included offense.

*Mauk v. State,* 91 Md.App. 456, 605 A.2d 157, 170–71 (1992) (citing *Bell v. State,* 249 Ga. 644, 292 S.E.2d 402 (1982) (quotation and other citations omitted));[4] *see also State v. Klinger,* 698 N.E.2d 1199, 1202 (Ind.App.1998); *State v. Woodson,* 338 Md. 322, 658 A.2d 272 (1995). Our analysis also is consistent with the approach of the Eighth Circuit, in *United States v. Bordeaux,* 121 F.3d 1187 (8th Cir.1997),[5] which held that:

> [W]here the jury expressly indicates that it is unable to reach an agreement on the greater charge, a conviction on a lesser included offense does not constitute an implied acquittal of the greater offense and presents no bar to retrial on the greater offense. Under these circumstances, we find controlling the mandate of the Supreme Court that a retrial following a hung jury does not violate the Double Jeopardy Clause.

*Id.* at 1193.[6] We are persuaded, then, that Allen's case may best be described as one involving a hung jury rather than an implicit acquittal, and thus, retrial would not be barred unless some other factor precludes retrial.

We next determine whether the trial court's reasonable efforts instructions is a factor that implicated double jeopardy principles in this case. Allen and PDS forcefully argue that since a reasonable efforts instruction was given, the jury's verdict on the lesser included offense of possession terminated the case against Allen. The government contends, in essence, that the reasonable efforts instruction presents no double jeopardy barrier to retrying Allen on a continuing jeopardy theory.

In this jurisdiction, we have permitted a defendant to elect to have a trial judge give the jury either an "acquittal first" or "reasonable efforts" instruction. In *Jackson v. United States,* 683 A.2d 1379 (D.C. 1996), we stated:

---

**4.** Although in *People v. Fields,* 13 Cal.4th 289, 52 Cal.Rptr.2d 282, 914 P.2d 832 (1996), the Supreme Court of California generally followed the principle set forth in *Eccles, supra,* and *Mauk, supra,* it concluded that a state statute precluded retrial on the greater offense after the defendant was convicted of the lesser included offense:

> Although we find the doctrine of implied acquittal inapplicable to a case such as this one, in which the jury is not merely silent but expressly deadlocked on the greater offense, this conclusion does not mean that defendant was properly retried on the greater offense under principles of manifest necessity or legal necessity. To the contrary, notwithstanding the jury's deadlock on the greater offense, defendant could not be subjected to retrial on that charge. As we explain, once the verdict of guilty on the lesser included offense was received by the trial court and recorded, and the jury was discharged, defendant stood convicted of the lesser included offense within the meaning of [West's Ann. Cal.Penal Code] § 1023. Pursuant to that statute, when an accused is convicted of a lesser included offense, the conviction bars a subsequent prosecution for the greater offense.

*Id.* 52 Cal.Rptr.2d 282, 914 P.2d at 840–41 (citation omitted).

PDS calls our attention to *Cantrell v. State,* 266 Ga. 700, 469 S.E.2d 660 (1996) which followed a longstanding Georgia legal princi-

ple that: "[I]f a jury returns a verdict on a lesser included offense, further deliberations are precluded." *Id.* at 661 (footnote omitted). However, *Cantrell* is based on an 1857 Georgia case, *Jordan v. State,* 22 Ga. 545 (1857), which interpreted a Georgia Penal Code provision to bar a new trial on the offense of murder after the defendant was found guilty of voluntary manslaughter. *Id.* at 558–59.

**5.** PDS cites *Ryan v. Arellano,* 1999 WL 351079 (Ariz.App. June 4, 1999) as inconsistent with *Bordeaux. Ryan,* however, has been depublished and is pending further appellate review by the Arizona Supreme Court.

**6.** This issue was raised in the Second Circuit in *Paul v. Henderson,* 698 F.2d 589 (2nd Cir.), *cert. denied,* 464 U.S. 835, 104 S.Ct. 120, 78 L.Ed.2d 118 (1983), where the jury hung on felony murder but convicted appellant of attempted robbery. In dictum, the court rejected the argument that double jeopardy prevented retrial on the felony murder charge. "Since the first trial never ended in a final determination of the petitioner's guilt or innocence, the jeopardy never terminated. Therefore the defendant's retrial ... did not subject him to *double* jeopardy." *Id.* at 592 n. 6. As far as we know, no other federal circuit court has addressed this issue.

For some time an "acquittal first" instruction was the standard instruction given in this jurisdiction. *(Nathan) Jones v. United States*, 544 A.2d 1250, 1252 (D.C.1988). The acquittal first instruction requires a jury to unanimously acquit a defendant on a greater offense before returning a verdict on a lesser offense.[ ] *Id.* In *(Nathan) Jones*, however, this court held that when the jury reported a deadlock on the greater offense, the acquittal first charge could not be given on reinstruction over defense objection. *Id.* at 1254. Instead, a "reasonable efforts" instruction should be given, permitting a jury to consider a lesser offense after making "all reasonable efforts" to reach a verdict on the greater offense. *Id.* Subsequently, because each instruction presents distinct tactical advantages and disadvantages, and because the defendant's liberty is at stake, we held in *Wright v. United States*, 588 A.2d 260 (D.C.1991), that a defendant who timely requests the reasonable efforts instruction is entitled to it at the time of the initial charge to the jury. *Id.* at 262; *see Cosby v. United States*, 614 A.2d 1291, 1296 & n. 6 (D.C. 1992) (noting that defendant [is] entitled to reasonable efforts [re]instruction upon request).

*Id.* at 1382. Both Allen and PDS seize upon the following language in *Jackson* which they believe supports their argument that the reasonable efforts instruction ultimately put a definitive end to the prosecution against Allen:

> [T]he terms of the reasonable efforts instruction control the return and entry of verdicts when the jury has been instructed thereon. Under reasonable efforts the jury has "done its job" when it has made all reasonable efforts to agree on the greater offense and has reached a verdict on the lesser offense. Accordingly, the trial court should then accept the verdict and discharge the jury.

*Id.* at 1383. We need not speculate about the meaning of this passage in the context of the *Jackson* case, or the case before us where a mistrial on the greater charge was granted, because the issue of double jeopardy was not before the *Jackson* court.

The fact that, in a case where the defendant elects a reasonable efforts instruction, a jury unable to agree on the greater charge is deemed to have "done its job" because it has acted as instructed, does not necessarily imply that one jury's inability to agree should work to the disadvantage of the government's ability to secure a conviction on that charge by another jury.

■■■ PDS and Allen raise issues that may occur if Allen is retried, such as deprivation of a lesser included offense instruction in the second trial; or what to say to the jury, if anything, about his conviction at his first trial. In addition, PDS stresses the "daunting logistical problems presented by retrial after a conviction on a lesser included offense." We leave those issues for another day because Allen has not yet been retried, and those issues are best resolved during a second trial. We also leave for another day any collateral estoppel issues that may be posed by a second trial. *See Ashe v. Swenson*, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970).[7] Suffice it to say, at this point, that the Double Jeopardy Clause also protects against multiple punishments, and thus, Allen may not be punished twice for the same offense. *See Lennon v. United States*, 736 A.2d 208, 209 (D.C.1999); *Brown, supra*, 576 A.2d at 732. We now hold only that the Double Jeopardy Clause of the Fifth Amendment is not a bar to

---

**7.** In *Ashe, supra,* the Supreme Court held that the collateral estoppel rule "is embodied in the Fifth Amendment guarantee against double jeopardy." *Id.* at 445, 90 S.Ct. 1189. " 'Collateral estoppel' is an awkward phrase, but it stands for an extremely important principle in our adversary system of justice. It means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Id.* at 443, 90 S.Ct. 1189. *See also Young v. United States*, 745 A.2d 943 (D.C.2000).

retrial of a defendant, under a continuing jeopardy theory, where the jury expressly states that it is unable to reach agreement on the greater offense of possession with intent to distribute a controlled substance, and the trial court has declared a mistrial as to the greater offense after the jury finds the defendant guilty of the lesser offense of possession.

For the foregoing reasons, we reverse the order of the trial court dismissing the indictment on the greater offense of possession with intent to distribute and remand for further proceedings consistent with this opinion.