**Jamal CHILDS, Appellant,**

v.

**UNITED STATES, Appellee.**

No. 00–CO–52.

District of Columbia Court of Appeals.

Argued Sept. 26, 2000.
Decided Oct. 12, 2000.

---

Timothy P. O'Toole, Public Defender Service, with whom James Klein, Public Defender Service, was on the brief for appellant.

Valinda Jones, Assistant United States Attorney, with whom Wilma A. Lewis, United States Attorney, and John R. Fisher and Douglas K. Klein, Assistant United States Attorneys, were on the brief, for appellee.

Before TERRY, FARRELL and REID, Associate Judges.

PER CURIAM.

Appellant Jamal Childs challenges the trial court's denial of his motion to dismiss a felony murder charge on double jeopardy grounds. He contends that since he was convicted of the lesser included offense of armed robbery in his first trial, the Double Jeopardy Clause of the Constitution of the United States precludes his retrial on the charge of felony murder.[1] Relying upon our recent decision in *United States v. Allen*, 755 A.2d 402 (D.C.2000), which we

conclude is indistinguishable from this case, we affirm the judgment of the trial court.

## PROCEDURAL AND FACTUAL SUMMARY

The government's evidence, presented, in part, through the testimony of one alleged co-conspirator, Gregory Lilly, showed the following alleged events. On January 13, 1996, Childs, Eric Greenleaf, and Lilly conspired to murder and rob Garnett, a drug dealer who routinely supplied drugs to Lilly for sale. The three men planned to steal three pounds of marijuana from Garnett, and to divide it equally among themselves. Lilly arranged for the delivery of the marijuana to Lilly's home in the District in the early morning hours of January 14, 1996. At the appointed time, Garnett arrived at Lilly's home with the marijuana and proceeded to the back door of Lilly's home. Lilly stepped outside the back door, but apparently decided to return to the inside of his home where Childs was waiting. Childs urged him to "[g]o on ahead and kill [Garnett]." Lilly exited his house again, and shot Garnett in the head. Garnett, who also possessed a weapon, fired shots at Lilly. While the two men wrestled, Lilly shot at Garnett two more times, and called to Childs for assistance. Childs came out of Lilly's home, and Lilly urged him to "grab" Garnett's gun. Childs took the gun and "shot [Garnett] 2 times in the head." Garnett was mortally wounded.

After all of the evidence had been presented at trial and the jurors had deliber-

---

1. After a jury trial on a ten count indictment, Childs was convicted of the armed robbery of Damon Garnett (D.C.Code §§ 22–2901, –3202 (1996)); conspiracy to rob and kill Garnett (§§ 22–105(a), –2901, –3202); possession of a firearm during a crime of violence against Garnett (§ 22–3204(b)); and carrying a pistol without a license (§ 22–3204(a)). The jury acquitted him of the armed robbery of Garnett's girlfriend, but could not agree on five other counts of the indictment, including first degree felony murder of Garnett while

armed—felony murder (§§ 22–2401, –3202). The other charges on which the jury could not agree were: first degree premeditated murder of Garnett while armed (§§ 22–2401, –3202); armed kidnapping of Garnett's girlfriend (§§ 22–2101, –3202); armed carjacking (§ 22–2903); and possession of a firearm during a crime of violence against Garnett's girlfriend (§ 22–3204(b)). The government decided to retry Childs on the five offenses on which the jury could not agree.

ated for a little more than two days, they informed the court of their decision on three counts of the indictment, and their inability to reach a verdict on the other seven. The three verdicts were accepted and the jurors were instructed to continue their deliberations. The next day, after additional deliberations and a note indicating no agreement on the remaining seven charges, the trial judge gave the *Winters*[2] charge and the jury continued its deliberations after lunch. Later that same afternoon, the jury advised that it had reached a verdict on two additional charges, but had deadlocked on the remaining five offenses. Defense counsel asked the trial court to declare a mistrial, and the trial judge responded: "I don't think I have a choice." When the jury foreperson, in response to the trial judge's inquiry, stated that deliberating the rest of the day would not help, the trial judge proceeded to take the jury's additional verdicts and to dismiss the jury.

Following dismissal of the first jury, the government sought to retry Childs on the five counts upon which the jury could not agree. Childs moved to dismiss the felony murder charge, on the ground that he had been convicted of the separately charged and lesser included armed robbery offense, and thus, retrial on that charge would violate the Double Jeopardy Clause of the Fifth Amendment. In denying Childs' motion to dismiss, the trial judge noted her intent not to sentence him for any of his convictions until the completion of the retrial. Further, she indicated that Childs' case was one of continuing jeopardy, and after careful consideration and analysis of relevant case law, concluded that the Double Jeopardy Clause did not bar Childs' retrial on the felony murder charge. Childs filed an appeal, but later withdrew

his appeal, apparently as a condition of a negotiated plea agreement. After the plea negotiations collapsed, the trial court reissued its order denying Childs' motion to dismiss, and Childs filed a second appeal.

## I.

We first consider jurisdictional questions raised by the government, whether Childs' appeal was timely, and whether this court has jurisdiction to consider this interlocutory appeal. The government maintains that this court has no jurisdiction because Childs voluntarily, intelligently and knowingly waived his right to appeal by withdrawing his first appeal, and that upon issuance of the mandate on December 30, 1999, "the dismissal of [his] appeal became a final and conclusive judgment" which terminated appellate jurisdiction. Thus, Childs' second appeal was untimely. In addition, the government argues that the trial judge was prohibited by D.C.App. R. 4(b)(1) and (b)(3) from extending the thirty day time limit for filing an appeal after the entry of judgment.[3] The government also argues that this case is not a proper interlocutory appeal because Childs is scheduled to be retried on four other counts. Childs argues that he "agreed to withdraw his interlocutory appeal as a condition of [his] plea" in lieu of retrial. Thus, he withdrew his appeal on November 22, 1999, so that his case could be returned to the trial court for entry of his negotiated plea. Furthermore, Childs contends that, under these circumstances where the parties operated on a mistaken assumption of resolution, the trial court properly "reissue[d] the original order and ... allow[ed] the defendant to file a timely appeal." He also maintains that because the December 30, 1999 mandate of this court dismissing his first appeal did not issue prior to the

---

2. *Winters v. United States,* 317 A.2d 530 (D.C. 1974) (en banc).

3. D.C.App. R. 4(b)(1) provides in pertinent part: "A notice of appeal in a criminal case shall be filed with the Clerk of the Superior Court within thirty days after entry of judg-

ment or order from which the appeal is taken unless a different time is specified by the provisions of the District of Columbia Code." Rule 4(b)(3) specifies that the time for filing a notice of appeal may be extended for thirty days "[u]pon a showing of excusable neglect."

trial court's December 17, 1999 reissuance of its order and finding, he could have perfected his first appeal.

■ The Supreme Court has indicated that in cases involving complicated jurisdictional questions, "where the merits have been rendered plainly insubstantial" by another case, the court may proceed to the merits without deciding the jurisdictional issues:

> It ... is evident that, whichever disposition we undertake, the effect is the same. It follows that there is no need to decide the theoretical question of jurisdiction in this case. In the past, we similarly have reserved difficult questions of our jurisdiction when the case alternatively could be resolved on the merits in favor of the same party.... Although such a disposition would not be desirable under all circumstances, we perceive no reason why we may not so proceed in this case where the merits have been rendered plainly insubstantial.... Making the assumption, then, without deciding, that our jurisdiction in this cause is established, we affirm the judgment in favor of the Secretary on the basis of our decision in *Mathews v. Lucas,* 427 U.S. 495 [96 S.Ct. 2755, 49 L.Ed.2d 651] (1976).

*Norton v. Mathews,* 427 U.S. 524, 532–33, 96 S.Ct. 2771, 49 L.Ed.2d 672 (1976). *See also Harrison v. Children's Nat'l Med. Ctr.,* 678 A.2d 572 (D.C.1996); *Stevens v. Quick,* 678 A.2d 28 (D.C.1996) (adopting principle of *Norton* ). Twenty years later, the Supreme Court cautioned against broad application of the *Norton* "assuming jurisdiction" approach. *See Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998). However, the Supreme Court sustained *Norton*'s vitality on the jurisdictional question, in proper cases.[4] This case is a proper one for the application of the *Norton* approach because our decision in *Allen, supra,* renders Childs' merits claim insubstantial. *See District of Columbia v. Jerry M.,* 580 A.2d 1270, 1276 (D.C.1990) ("'A claim is insubstantial only if its unsoundness so clearly results from the previous decisions of this court as to foreclose the subject and leave no room for the inference that the questions sought to be raised can be the subject of controversy' " (quoting *Hagans v. Lavine,* 415 U.S. 528, 537–38, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974)) (other citation and internal quotations omitted)). Therefore, we assume, without deciding, that we have jurisdiction in this case, and turn to the merits of Childs' appeal.

## II.

■ We see no discernible difference between Childs' case and *Allen.*[5] In *Allen,* as in this case, the jury convicted the appellant on a lesser included charge, and after expressly stating its inability to agree on the greater offense, the defense requested a mistrial. We determined that "Allen's case [was] controlled by the hung jury principles rather than those governing an implicit acquittal." 755 A.2d at 408. Consequently, we held that:

> [T]he Double Jeopardy Clause of the Fifth Amendment is not a bar to retrial of a defendant, under a continuing jeopardy theory, where the jury expressly states that it is unable to reach agreement on the greater offense ... and the trial court has declared a mistrial as to the greater offense after the jury finds

---

4. The Supreme Court in *Steel Co., supra,* was concerned mainly with the emergence of the "doctrine of hypothetical jurisdiction" which some circuits were using to avoid any difficult jurisdictional issue, rather than applying the *Norton* approach only to cases where a clear precedent made the merits claim insubstantial.

5. We do not consider the differences cited by Childs, such as the charge of armed robbery and felony murder in separate counts of the indictment in this case, or the giving of a reasonable efforts charge in *Allen,* to be significant.

the defendant guilty of the lesser offense. . . .

*Id.* at 411–12. Since this holding is clearly applicable to Childs' case, we are constrained to affirm the denial of Childs' motion to dismiss the felony murder charge.

Accordingly, for the foregoing reasons, we affirm the judgment of the trial court.

*So ordered.*