Stephen A. HOLT, Appellant,

v.

UNITED STATES, Appellee.

No. 00–CF–631.

District of Columbia Court of Appeals.

Argued April 9, 2002.

Decided Aug. 29, 2002.

RUIZ, Associate Judge:

Stephen A. Holt was indicted on one count of unlawful distribution of a controlled substance (heroin) within 1,000 feet of a "drug-free" zone and one count of unlawful possession of a controlled substance (heroin) with intent to distribute ("PWID") within 1,000 feet of a "drug-free" zone.[1] In October, 1999, a jury found Holt guilty of possession of a controlled substance, the lesser included offense of the PWID charge, but could not agree on a verdict on either the PWID count or the distribution count. Upon motion by Holt's counsel, the trial court declared a mistrial.

In January of 2000, Holt was once again tried on the distribution and PWID counts and, after a three day trial, found guilty of both offenses. He now appeals, raising double jeopardy and collateral estoppel claims as well as contending that the trial court erroneously instructed the jury in the second trial. We affirm.

**I.**

Richard Todd Hunter, appointed by the court, for appellant.

Valinda Jones, Assistant United States Attorney, with whom Roscoe C. Howard, Jr., United States Attorney, John R. Fisher, Mary–Patrice Brown and Kimberly S. Knowles, Assistant United States Attorneys, were on the brief, for appellee.

Before STEADMAN and RUIZ, Associate Judges, and NEBEKER, Senior Judge.

*Holt's First Trial* [2]

Officer Ronzell Baker of the Metropolitan Police Department testified that on May 29, 1999, he and Officer Darryl Lingham were on patrol near 8th Street, N.W., in Washington, D.C. The officers, assigned to a drug enforcement unit, were in plain clothes and driving an unmarked police car. Officer Baker testified that at approximately 12:30 p.m., while stopped at a stop sign in the 800 block of 8th Street, he noticed a man, later identified as Bobby Lee James, give appellant Holt some mon-

---

**1.** D.C.Code §§ 33–541(a)(1) and –547.1 (1997), recodified as D.C.Code §§ 48–904.01(a)(1) and –904.07a (2001).

**2.** Holt did not order the transcripts of the first trial for this appeal, nor does he discuss in his brief any of the testimony elicited at the first trial. The government's version of the testimony is therefore given here, as there is no dispute regarding its accuracy. It is also not disputed that the testimony of the government witnesses at the second trial was consistent with their testimony at the first trial.

ey. The officer then observed Holt reach into his right front pants pocket and retrieve a small object, which he placed in James' left hand. Officer Baker asked Officer Lingham, "Did you see that?," and turned the patrol car to the left, parking right in front of where Holt and James were standing. As Officer Baker stepped out of the car, he saw James drop a small ziplock bag to the sidewalk. Officer Baker retrieved the bag, which contained a white powder substance. The officer identified himself to Holt, placed him under arrest and searched him. Officer Baker recovered from Holt's right front pants pocket a plastic ziplock bag which contained nine clear bags of a white powder substance, later determined to be heroin, and found $148 in his left pants pocket. The distance between where Holt and James had been standing on the sidewalk and Cleveland Elementary School was measured by Officer Lingham to be 100 feet.[3]

Bobby Lee James, the man whom Officer Baker had seen engage in a drug transaction with Holt, testified at the first trial in Holt's defense. According to James, he and Holt were standing on the corner of 8th and T Streets, N.W., at around 12:30 p.m., where they had been talking for about 15 to 20 minutes. At that time, he handed Holt a bag of heroin to open for him because the "tag was on it real tight, and [he] didn't have no nails." As appellant handed the bag back, James explained, the police approached them and he threw the bag away. James denied that Holt had sold him heroin or given him the ziplock bag, or that he had given Holt any money.

Harry Miller, who had known Holt and Bobby James for a couple of years, also testified at Holt's first trial for the defense. Miller stated that he was also on the corner of 8th and T Streets on May 29, 1999, at around 12:30 p.m and that he had seen James walk up to Holt and that either he or Holt had asked James for "a blow," which Miller explained meant powder heroin. Miller stated that Holt then began to walk toward James as a police car turned the corner onto 8th Street. He saw James reach into his pocket and retrieve the ziplock bag, but never saw Holt handle the bag.

After the close of the evidence, the trial court instructed the jury on the elements of distribution of a controlled substance within 1,000 feet of a drug-free zone; possession of a controlled substance with intent to distribute within 1,000 feet of a drug-free zone; and possession of a controlled substance, which the court explained was a lesser included offense of possession of a controlled substance with intent to distribute.[4] The trial court also instructed the jurors on the sequence in which they should consider the greater and lesser offenses, charging that:

> You at first consider whether or not the Government has proven beyond a reasonable doubt the greater offense of possession with intent to distribute a controlled substance-heroin, within 1,000 feet of a drug free zone. If you find the defendant guilty of that offense, you don't have to return a verdict as to a lesser offense because that's necessarily included. If you find the Government has failed to prove beyond a reasonable doubt any element of a greater offense, then you would consider and return a verdict with respect to this possession offense.

---

3. The government also presented the testimony of Officer Lingham and Detective Charles Culver, a drug expert, who opined that the ziplock dropped by James and the nine zi- plocks recovered from appellant came from the same batch of heroin.

4. This portion of the transcript from the first trial was included in the record on appeal.

A short time later, before sending the jury to deliberate, the trial court explained to the jurors that a verdict form would be sent back with them. The court instructed that:

> After you discuss the case to your satisfaction, you reach your verdicts, you would also fill out this verdict form. It just has a place for you to check guilty or not guilty as to the charges. It again reinforces the relationship between the greater offense of possession with intent to distribute controlled substance, heroin, and simple possession. It tells you that if you find the defendant guilty of the greater offense, don't even check the box with respect to possession. If you find him not guilty, of course you would go on and consider the lesser included offense of possession as lesser of the greater possession [ ] with intent to distribute.

Approximately two and one-half hours after beginning their deliberations, the jury sent a note to the court indicating that a verdict had been reached. Before they could be brought back into the courtroom, however, the deputy clerk of the court informed the judge that one of the jurors had second thoughts and was writing another note. A few moments later, the trial court was handed a note and it was announced that Juror No. 5 had a question. According to the judge, the note stated, "If the only transfer of heroin was from Bobby James to Mr. Holt for opening and then back to Bobby James, does this by the letter of the law constitute distribution?" Over objection from defense counsel, the trial court responded "yes," and sent the note back to the jury. The jury then returned another note which stated, "We stand by our verdict, and we are ready to give our verdict."

The jury was returned to the courtroom and the trial court asked the foreperson whether they had reached unanimous verdicts in the case, to which the foreperson responded that they had. The foreperson then proceeded to declare that the jury had found Holt guilty of both the distribution and the PWID counts. Defense counsel requested that the jury be polled and the trial court began to ask each juror whether his or her verdict was as announced by the foreperson. Juror No. 5 disagreed with the verdict, causing the judge to stop the polling and inform the jurors that, since they had not reached a unanimous verdict, they would resume deliberating the next day.

The next morning, after approximately 35 minutes of deliberation, the jurors again indicated to the trial court that they had reached a unanimous verdict on one count, which turned out to be the simple possession charge. The trial court thanked the jurors for their partial verdict and then stated, without objection, "Obviously you haven't reached unanimous verdicts on the other two counts. You may continue with your deliberations." After the jury was sent back for further deliberations, the trial court commented to counsel:

> Okay, I didn't see the verdict form. It was on the acquittal first formulation that we used and not reasonable efforts, so I assume they acquitted him of the greater charge of PWID and returned a guilty verdict on simple possession. And I did say, "You haven't reached unanimous verdicts on the other two counts." It's actually only one count at this point, but I didn't look at the verdict form. They obviously have acquitted him, I assume, and not declared a mistrial, but I don't know because I didn't see the verdict form with respect to the greater offense. In the posture that the case is in right now, I'm just going to have them continue to deliberate.

A short time later, the deputy clerk retrieved the verdict form which the jury

had submitted earlier and handed it to the judge. The trial court noted that, "The verdict form doesn't reflect they reached [a] unanimous verdict on the greater charge, but they were able to reach [a] unanimous verdict on the lesser included offense instruction. They didn't acquit him, they just weren't able to reach a verdict on that charge, and we'll have to deal with that issue later." The court then related to counsel that a note had just come in from the jury stating, "We have not been able to reach a unanimous verdict in counts one and two." The trial court then repeated, "As I said, they apparently have not acquitted him of the greater charge," and advised counsel that he would allow deliberations to continue, but would not give an anti-deadlock charge to the jury for fear of being coercive.

About one hour later, the jury sent another note to the court stating, "We have re-voted and failed to reach [a] unanimous verdict." Defense counsel moved for a mistrial on the remaining counts, which the trial court granted over the government's objection.

### Holt's Second Trial

On January 12–14, 2000, appellant was retried on the counts of distribution of a controlled substance (heroin) and possession of a controlled substance (heroin) with intent to distribute. With the exception of a different drug expert, the government presented the same witnesses at the second trial as at the first, and the testimony elicited was generally consistent with that given in the prior proceeding. The defense, however, presented testimony from a new witness, Scotty Thomas, and appellant testified on his own behalf, in addition to the testimony of Harry Miller, who had testified at the first trial.

Thomas testified that on May 29, 1999, he was looking out a window that overlooked 8th and T Streets, when he saw Bobby James walking on the sidewalk. Thomas left the building to see if he could get some heroin from James, and next saw James with appellant and one other person standing on 8th Street. According to Thomas, James had something in his hand which he was about to give to appellant. Thomas saw James drop something and, thinking that it was a package, he began to walk toward James until he saw the police officers arrive, at which time he decided to leave the area.

Harry Miller testified, as he did in the first trial, that he was near the corner of 8th and T Streets in the company of Holt on the day in question. Miller recounted how Holt had said, "We're going to get a blow [heroin] from Bobby James," who was walking down the sidewalk. Miller testified that he saw Holt and James meet and begin to walk across the street together. Miller saw James pull something out of his pocket, which he dropped when the police officers appeared from around the corner. On cross-examination, the government attempted to impeach Miller with inconsistent statements he made during Holt's first trial.

Holt took the stand and admitted that he was in the vicinity of 8th and T Streets on May 29, 1999, trying to purchase some heroin. According to Holt, he approached James and began to walk across the street with him, asking him for "a hit." James began to "make a move" but saw the police coming and dropped a bag of drugs. James then stood up, picking up a horseshoe which had been laying on the ground. Holt admitted that he had in his possession nine small bags of heroin, but claimed that they were for his personal use and that he was trying to purchase more drugs because he felt he needed to save the bags for consumption during the coming night and the following day.

On January 18, 2000, the jury found Holt guilty both of distribution and posses-

sion of a controlled substance with intent to distribute.

## II.

■ Holt's primary argument on appeal is that the Double Jeopardy Clause of the Fifth Amendment barred his retrial for possession with intent to distribute. According to Holt, because the trial court gave an "acquittal first" instruction and the jury verdict form was also to that effect, the fact that the jury found him guilty of the lesser included offense of simple possession without stating whether it found him either guilty or not guilty on the PWID count indicates that the jury implicitly acquitted him on the greater charge. We disagree.[5]

In *United States v. Allen*, 755 A.2d 402 (D.C.2000), a case similar to the one at bar, the government appealed the trial court's dismissal on the ground that double jeopardy precluded the retrial of appellee. There, as in this case, the jury had been told to continue deliberations after returning a verdict of guilty on the lesser

included offense of possession, but failing to reach a verdict on the greater offense of PWID. *See id.* at 405. After further attempts to do so, the jury sent a note to the judge stating that, "We have expended what we unanimously agree to be a reasonable effort to reach a conclusion. After additional instruction, we are unable to agree to a verdict on the first count. We strongly believe that additional effort will not change that." *Id.* Defense counsel asked for a mistrial with respect to the greater offense, which was granted, and the jury was discharged. *See id.* Upon the government's attempt to retry Allen on the PWID count, the trial court dismissed the indictment on double jeopardy grounds. *See id.* On appeal, we reversed that determination, holding that, "Where the jury expressly indicates that it is unable to reach an agreement on the greater charge, a conviction on a lesser included offense does not constitute an implied acquittal of the greater offense and presents no bar to retrial on the greater offense." *Id.* at 410.

**5.** The government asserts that Holt has waived his double jeopardy claim because he did not file a pre-trial motion seeking to preclude his retrial on the PWID count or raise the issue of double jeopardy during his second trial. We need not address the question of waiver because we conclude that, even assuming that Holt could raise the issue for the first time on appeal, there was no violation of the Double Jeopardy Clause in this case. Authority regarding the waiver of double jeopardy rights is unclear and somewhat contradictory and thus, the issue would have warranted further deliberation had this been a different case. *Compare Christian v. United States*, 394 A.2d 1, 38 (D.C.1978) ("The constitutional immunity from double jeopardy is a personal right which, if not affirmatively pleaded by the defendant at the time of trial, will be regarded as waived.") (quoting *United States v. Scott*, 150 U.S.App. D.C. 323, 324, 464 F.2d 832, 833 (1972)); *In re J.A.H.*, 315 A.2d 825, 827 (D.C.1974) (noting that the appellant had not raised the issue of double jeopardy with the trial court, thus waiving his

constitutional immunity under that doctrine as the defense of double jeopardy could not be raised for the first time on appeal), *with Menna v. New York*, 423 U.S. 61, 62 & n. 2, 96 S.Ct. 241, 46 L.Ed.2d 195 (1975) (although not a "hold[ing] that a double jeopardy claim may never be waived," rejecting government's argument that plea constituted waiver of double jeopardy claim because "[w]here [a] State is precluded [on double jeopardy grounds] from haling a defendant into court on a charge, federal law requires that a conviction on that charge be set aside ..."); *Blackledge v. Perry*, 417 U.S. 21, 30–31, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974) (holding that even a plea of guilty to a felony charge which had been brought unconstitutionally by the government did not foreclose a subsequent challenge to the respondent's conviction because the respondent's right in the case was "the right not to be haled into court at all upon the felony charge. The very initiation of proceedings against [the respondent] in the Superior Court thus operated to deny him due process of law.").

■ Here, the jurors in Holt's first trial also sent a note stating that they were unable to reach a unanimous verdict on the PWID count. Under *Allen*, the retrial of appellant was therefore not barred as a second prosecution following acquittal, since the jury expressly stated that it was unable to reach agreement on the greater offense of PWID and thus there was no implied acquittal on that count. It makes little difference that in *Allen* there had been a "reasonable efforts" instruction given, while here the judge charged the jury with an "acquittal first" instruction. As was the case in *Allen*, our decision is based on the jurors' explicit announcement, after they were sent back to continue deliberations on the PWID charge,[6] that they could not come to a unanimous decision on either the PWID or the distribution count.

Holt also argues that the "same offense" analysis the Supreme Court applied in *Brown v. Ohio*, 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977), barred his successive prosecution on the PWID count after he had been convicted of simple possession. Undeniably, had Holt been prosecuted first for simple possession based on the May 29 incident, and then, in a later proceeding, for possession with intent to distribute based on the same event, his subsequent prosecution would have run afoul of *Brown*. However, that is not what occurred here. Rather, Holt was indicted on the PWID count (as well as the distribution count) and the jury was instructed that they could also consider the lesser included offense of simple possession. As the government correctly contends, despite *Brown's* prohibition against sequential prosecutions of greater and lesser included offenses, the Supreme Court has also clarified that the government is not prohibited by the Double Jeopardy Clause from charging a defendant with greater and lesser included offenses and prosecuting those offenses in a single trial. *See Ohio v. Johnson*, 467 U.S. 493, 500–02, 104 S.Ct. 2536, 81 L.Ed.2d 425 (1984). After a mistrial, the retrial is not a successive prosecution for purposes of the Double Jeopardy Clause, but is deemed to be a continuation of the jeopardy which attached in the first trial.

Appellant further contends that principles of collateral estoppel barred the government from retrying him on the PWID count. He bases his claim on *Ashe v. Swenson*, 397 U.S. 436, 445, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970), in which the Supreme Court held that the doctrine of collateral estoppel forms part of the Fifth Amendment's guarantee against double jeopardy. Appellant correctly states the legal principles but they have no application to his case.

■ "Collateral estoppel" stands for an extremely important principle in the adversary system of justice. *See id.* at

---

**6.** Appellant did not object at trial to the trial court's instruction to the jury to continue deliberating after it returned a guilty verdict on the lesser included offense. On appeal, he argues in passing that the double jeopardy bar applied "because the trial judge goad[ed] the defense to motion for a mistrial to give the government an improved opportunity to apply prosecutorial theory and use evidence a second time." To the extent this argument is intelligible, it is not supported by the record. The trial court did not give, or threaten to give, an anti-deadlock instruction that could have been perceived by defense counsel as "goading" to move for a mistrial. To the contrary, the trial court expressly stated it would not give such a charge. Further, the government opposed defense counsel's motion for a mistrial, so it apparently did not perceive a benefit in a second trial. Under the circumstances, we see no plain error in the trial court's actions in trying to ascertain what the jury had done and encouraging further deliberations, after the jury returned its first, partial verdict.

443, 90 S.Ct. 1189. "It means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Id.* However, the doctrine is "generally applicable only where there has been a conclusive prior resolution of the precise factual question presented in the subsequent proceedings." *Copening v. United States,* 353 A.2d 305, 309 (D.C. 1976). More important to this case, the party asserting collateral estoppel must establish that the issue was previously "necessarily determined" in his favor. *See id.* (citing *Moore v. United States,* 120 U.S.App. D.C. 173, 175, 344 F.2d 558, 560 (1965)).

■ Holt's contention that he was "impliedly acquitted" on the PWID count does not withstand scrutiny because, as previously discussed, it is evident from the record that, notwithstanding the instruction given, the jury did not acquit him of PWID at his first trial, but rather could not come to a unanimous verdict on that charge. *See Halicki v. United States,* 614 A.2d 499, 502 (D.C.1992) (rejecting a collateral estoppel claim because the appellant failed to establish that the verdict constituted a conclusive resolution of a factual question presented at a retrial). Second, Holt has not shown that any ultimate issues of fact were decided in his favor during the first trial and then relitigated in the second. While it is true, as Holt points out, that the government's evidence in the first trial addressed the issue of possession, the jury did not resolve it in his favor. Collateral estoppel, therefore, did not bar the government from proving possession at the second trial.[7]

---

**7.** We also cannot agree with Holt's argument that the government was precluded under the doctrine of collateral estoppel from impeaching defense witness Harry Miller. Holt has not shown or explained how the testimony of Miller could equate to an element of the offense to be retried or how the jury in the first trial reached any ultimate conclusion regarding Miller's testimony.

## III.

Appellant also contends that the jury instructions given by the trial court at his second trial were erroneous, confused the jury, and caused him prejudice. Holt did not, however, object to the instructions, and therefore must show that the trial court plainly erred, *i.e.,* that the instructions were plainly wrong and that a "miscarriage of justice" resulted from that error. *See Gordon v. United States,* 783 A.2d 575, 581 (D.C.2001). On these facts, he cannot do so.

■ First, we do not agree with Holt that the trial court erred in its instructions to the jury on the distribution count when it stated that the government must prove beyond a reasonable doubt "that the defendant possessed some measurable amount of a controlled substance." The standard jury instructions were modified in 1996, well before Holt's trial, to reflect this court's decision in *Thomas v. United States,* 650 A.2d 183 (D.C.1994) (en banc). That decision made clear that the proper standard for evaluating the amount required for prosecutions under the D.C. Uniform Controlled Substances Act is a "measurable amount" rather than a "usable amount." *Id.* at 197. The trial court thus did not err, as it gave the appropriate instruction. *See* Criminal Jury Instructions for the District of Columbia, No. 4.30 (4th ed. 1993 & 1996 Supp.).

■ Nor do we agree with Holt's assertion that the trial judge erred by stating at the end of his recitation of the elements of PWID that "the key new element in this offense is the requirement that at the time the defendant possessed the controlled

substance he intended to pass some or all of it on to another person." Holt contends that the "possession of a controlled substance" was not a "key new element" in this case because the judge had instructed the jury on the distribution charge first, which already contained the element of possession. As we read the instruction, the judge's mention of a "key new element" was meant to highlight the latter part of the sentence which dealt with the "intent to pass some or all" of the controlled substance to another person, not to the language concerning possession. Unlike the offense of distribution, PWID requires proof of a specific intent to distribute a controlled substance, rather than a general intent to do so. *See Webster v. United States,* 623 A.2d 1198, 1206 (D.C. 1993). The judge's emphasis, if anything, highlighted for the jury that the government had an additional element to prove—an advantage for the defense. Therefore, the trial court did not plainly err in its instructions to the jury.

Having found no reversible error, we uphold appellant's conviction.

*Affirmed.*