**William Ernest HAMM,**
**Plaintiff-Appellant,**

v.

**John JABE, Superintendent, Kinross**
**Correctional Facility,**
**Defendant-Appellee.**

No. 82–1443.

United States Court of Appeals,
Sixth Circuit.

Argued March 30, 1983.

Decided May 10, 1983.

Bruce T. Leitman (argued), Bloomfield Hills, Mich., for plaintiff-appellant.

Frank J. Kelley, Atty. Gen. of Mich., Louis J. Caruso, Sol. Gen., Thomas C. Nelson, Asst. Atty. Gen. (argued), Corrections Div., Crim. Appeals Section, Lansing, Mich., for defendant-appellee.

Before KENNEDY, MARTIN and WELLFORD, Circuit Judges.

BOYCE F. MARTIN, Jr., Circuit Judge.

William Ernest Hamm appeals the denial of his petition for a writ of habeas corpus. Hamm contends that his convictions of first degree murder and assault with intent to murder were obtained in violation of the fifth amendment's prohibition against double jeopardy.

In July, 1975, Hamm was arraigned in Michigan state court and charged with murdering Dr. Charles Hoyt and assaulting Dr. Hoyt's wife. Defense counsel, questioning Hamm's competency to stand trial, sought and obtained a diagnostic commitment order from the court. Hamm was referred to the state Forensic Center, where Dr. Dennis Koson performed a psychiatric evaluation.

At a competency hearing held September 15, 1975, Dr. Koson testified that Hamm "barely met the legal criteria for competency." The court adjudged Hamm competent to stand trial and set a trial date in November, 1975. In the interval before trial, Hamm's case was reassigned to a different judge.

On November 18, 1975, just before trial began, Dr. Koson gave further testimony concerning Hamm's condition. He again expressed the opinion that Hamm was "barely competent." Dr. Koson cautioned that Hamm's exposure to the stress of the trial posed a "significant or serious risk of deterioration, including potential violence." Upon further questioning, Dr. Koson characterized the risk of Hamm becoming delusional and violent during trial as a "fifty-fifty chance." In view of Dr. Koson's testimony, arrangements were made for the defense to retain a consulting psychiatrist "on call." The court then ordered trial to proceed.

The state presented its case in chief without incident. On the fourth day of trial, however, the defense called Hamm's mother as a witness. In the course of Mrs. Hamm's testimony, Hamm rose suddenly and hurled his chair at the prosecutor. The chair struck a police detective who had rushed to protect the prosecutor from the blow. The judge ordered Hamm's immediate removal from the courtroom and invited both the prosecutor and defense counsel to address the record concerning the incident. Court was then recessed for the morning.

When court reconvened that afternoon, defense counsel reported that he had talked with his client and obtained Hamm's promise to exclude himself voluntarily from the courtroom during any further testimony by his parents. Counsel also indicated that Hamm would not take the stand himself lest he lose control during cross-examination by the prosecutor.

The judge rejected defense counsel's proposal. Emphasizing Hamm's delusions, in which the prosecutor apparently figured prominently, the judge ruled that Hamm's current condition prevented him from continuing to assist his attorney. Under these circumstances, held the court, Hamm was no longer competent to stand trial. The judge went on to declare a mistrial and entered an order committing Hamm to the Forensic Center. Defense counsel's subsequent objections to the order of mistrial were overruled.

In 1978, Hamm was again adjudged competent to stand trial. After a second trial, he was convicted and sentenced to life imprisonment. Hamm pursued an appeal through the state court system, claiming, among other arguments, that he had been subjected to double jeopardy. The Michigan Court of Appeals rejected the double jeopardy theory but reversed Hamm's conviction on other grounds. In 1981 Hamm was retried and convicted of the same offenses. The 1981 retrial has no bearing on the present proceedings.

In April, 1981, Hamm sought habeas corpus relief in the United States District Court for the Western District of Michigan.

The matter was referred to a United States Magistrate, who recommended that the court uphold the order of mistrial and absolve the state of placing Hamm in double jeopardy. The district court adopted the magistrate's report and recommendations and denied Hamm's petition. This appeal followed.

The sole issue before us is whether the trial court's declaration of a mistrial, made *sua sponte* and without the defendant's consent, should have barred Hamm's retrial on the same charges.

■ It is well settled that a trial judge may declare a mistrial over a defendant's objections if circumstances render such a disposition a "manifest necessity." *Arizona v. Washington,* 434 U.S. 497, 505–506, 98 S.Ct. 824, 830, 54 L.Ed.2d 717 (1978); *United States v. Perez,* 9 Wheat. 579, 6 L.Ed. 165 (1824). The decision to order a mistrial rests in the trial judge's discretion. *Illinois v. Somerville,* 410 U.S. 458, 462, 93 S.Ct. 1066, 1069, 35 L.Ed.2d 425 (1973); *Wade v. Hunter,* 336 U.S. 684, 691, 69 S.Ct. 834, 838, 93 L.Ed. 974 (1949). If, in the exercise of his discretion, the trial judge adheres to the standard of "manifest necessity," the prohibition against double jeopardy does not bar retrial of the defendant. *Arizona v. Washington,* 434 U.S. at 505, 98 S.Ct. at 830; *Gori v. United States,* 367 U.S. 364, 368, 81 S.Ct. 1523, 1526, 6 L.Ed.2d 901 (1961).

The Supreme Court has most recently defined "manifest necessity" as a "high degree" of necessity. *Arizona v. Washington,* 434 U.S. at 506, 98 S.Ct. at 830. We are persuaded that the circumstances of the present case fall within that standard.

■ The record below is replete with evidence that Hamm was never more than marginally competent to stand trial. After hearing the testimony of Dr. Koson, the court was well aware that Hamm suffered paranoid delusions about the prosecutor and that the stresses of trial were likely to undermine his fragile grip on reality. Hamm's violent assault on the prosecutor convinced the trial judge that Dr. Koson's prediction had come to pass—that the de-

fendant's condition had deteriorated below the threshold of competency to stand trial. We decline to substitute our judgment on this issue for that of the trial judge, who had the benefit of observing the defendant and hearing four days of testimony concerning Hamm's mental condition.

In reaching his decision to order a mistrial, the trial judge specifically ruled that Hamm was no longer able to assist his attorney in the conduct of his defense. Once this determination was made, due process required that the proceedings be halted. *Drope v. Missouri,* 420 U.S. 162, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975); *Pate v. Robinson,* 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966). It is difficult to imagine a "higher degree of necessity" for ordering a mistrial than a constitutional mandate.

Hamm contends that the trial judge abused his discretion when he refused defense counsel's proposal to excuse Hamm from the courtroom during potentially disturbing testimony. This claim is based on the proposition that trial courts should, whenever possible, pursue alternatives less drastic than declaration of a mistrial. *See Harris v. Young,* 607 F.2d 1081, 1085 (4th Cir.1979); *United States v. McKoy,* 591 F.2d 218, 222 (3d Cir.1979).

This argument merely avoids the central issue—Hamm's competency to stand trial. Hamm's absence from the courtroom would have alleviated only the superficial problem of his inappropriate behavior; it would not in any way have resolved the fundamental questions of his competency and due process rights.

Inasmuch as the trial judge's declaration of a mistrial fell within the rule of "manifest necessity," Hamm's retrial in 1978 did not violate the constitutional prohibition against double jeopardy. *Arizona v. Washington,* 434 U.S. at 505, 98 S.Ct. at 830.

The judgment below is affirmed.