**Jimmy NERO, Jr., Appellant**

v.

**DISTRICT OF COLUMBIA, Appellee.**

**No. 06–CT–269.**

District of Columbia Court of Appeals.

Argued Nov. 6, 2007.

Decided Nov. 29, 2007.

---

Kenneth W. Cowgill, appointed by the court, for appellant.

Stacy L. Anderson, Assistant Attorney General, with whom Linda Singer, Attorney General for the District of Columbia, Todd S. Kim, Solicitor General, and Rosalyn Calbert Groce, Deputy Solicitor General, was on the brief, for appellee.

Before NEWMAN, BELSON, and KING, Senior Judges.

NEWMAN, Senior Judge:

Appellant Jimmy Nero was charged by information with driving under the influence of drugs, in violation of D.C.Code § 50–2201.05(b)(1) (2001), and failing to obey the lawful order of a police officer, in violation of 18 DCMR § 2000.2 (2006). During cross-examination of Nero at his first trial, it was discovered that Nero was under the influence of Phencyclidine ("PCP"). After this discovery, trial counsel, over the objection of Nero, moved for a mistrial, which the trial court granted. Nero was represented by the same counsel at the retrial four days later; neither counsel nor Nero made any double jeopardy objections to the retrial. On appeal, Nero claims that his retrial violated the constitutional prohibition against double jeopardy since he voiced his opposition to his counsel's motion for a mistrial. We affirm.

## I.

### Background

At approximately 5:00 p.m. on September 14, 2004, the United States Capitol

Police directed traffic at the intersection of Washington and Independence Avenues, Southwest in the District of Columbia. Nero, while driving his vehicle, stopped at the intersection but failed to obey an officer's whistle and hand signals to proceed. After waiting approximately fifteen seconds for Nero to comply, the officer approached his vehicle and observed that Nero was dazed and incoherent, appearing to be impaired by alcohol or drugs. After the vehicle was moved to the side of the road, a second officer, trained in administering field sobriety tests, arrived at the scene. The second officer also observed that Nero appeared to be dazed, confused and incoherent. After administering three standardized field sobriety tests, the second officer concluded that Nero was clearly impaired and arrested him for driving under the influence. At the police station, Nero consented to a urinalysis, which showed that he was under the influence of PCP. Nero told an officer that he was "on the Holy Spirit."

At his first scheduled trial date, Nero's first trial counsel asked the court to permit him to withdraw from the case because of a difference of opinion. Nero then informed the court that "the Holy Spirit is in me and . . . I was in the spirit when I was in the car that day." He further explained that he was on "living water" and that he could not "call God a drug." The trial court asked if there were concerns about Nero's competency, to which both counsel for the government and counsel for Nero said no. The court then appointed new counsel for Nero and continued the matter.

At a status hearing on June 7, 2005, Nero was removed from the courthouse because he was "irate" and the court ordered that he be monitored by the Pretrial Services Agency for drug use. On November 9, 2005, he was taken into custody in a courtroom and tested positive for PCP.

The next day, the court ordered Nero held pending trial, set bond at $300, and ordered that he undergo a preliminary mental health screening.

On November 14, 2005, a clinical psychologist filed a report with the court opining that Nero was competent to stand trial. The trial court agreed, entered an order finding Nero competent to stand trial, and released him from custody on personal recognizance. That same day, defense counsel filed a motion asking the court to hold Nero in custody pending trial to ensure that he was not under the influence of drugs come trial. As Nero had already been released, the court denied the motion.

At trial on February 13, 2006, the government presented its case and rested. In the defense case-in-chief, Nero's counsel stated that he informed his client of his right not to testify, but Nero still wished to take the stand. On direct examination, Nero explained that at the time of the incident he "wasn't on drugs" but was "still with the Holy Spirit." On cross examination, Nero stated that PCP "is a living water, Holy Spirit, a fountain of living water." He said, "I am in the Spirit now as we're speaking . . . ."

Government counsel asked to approach the bench to discuss Nero's competency. Hearing this, Nero interjected and stated that he had been coming to court for two years, before the court cut him off. During the bench conference, both counsel and the trial court expressed concerns as to whether Nero was presently under the influence of drugs. The court then ordered a recess, during which Nero was required to undergo a urinalysis conducted by Pretrial Services. Nero's urine tested positive for PCP. After some discussion between counsel and the court, Nero's counsel moved for a mistrial, which the trial court granted, explaining:

Here's a defendant who has a history of abuse with PCP. And at some time while this case was pending, someone asked the Court to detain him so that he would be drug free pending trial, but apparently, one of my colleagues refused to do that. He comes in today. He gets on the witness stand. His behavior is such which prompted the prosecutor and defense counsel both to request the Court to have him tested for drug usage. He's tested positive for PCP. We have no way of knowing the extent of, how extensive that is with respect to his ability to understand what transpired here this morning or his ability to testify on his own behalf. Certainly, his testimony seemed to be very unusual. That it would be that unusual if he weren't, didn't have PCP in his system, we have no way of knowing.... To go forward with the trial when the defendant has drugs in the system, the defense attorney feels that this has affected the ability to arrive at a just result in this matter, I don't see where we have any choice but to grant a mistrial.

Again, Nero expressed his opposition to the mistrial and scheduling a new trial date. He explained again that this case has lasted two years, that he lost a job because of all of his court dates, that he had another job interview scheduled, and that he had freedom of religion. The trial court ordered Nero to be taken into custody and be held pending a new trial. After considering how long the effects of PCP last, the court scheduled the trial for February 15, 2006.

At the second trial, the parties stipulated that Nero tested positive for PCP at the time of his arrest, and two Capitol Police Officers testified about their observations of Nero and the field sobriety tests they conducted. On direct examination, Nero again testified that he was under the influence of the "Holy Spirit" at the time of his arrest. The trial court found Nero guilty and sentenced him.

## II.

### Analysis

Nero argues that his second trial violated his constitutional protection against double jeopardy. He asserts that this is a personal right, and claims that a trial court has a duty to inquire of a criminal defendant personally before declaring a mistrial. He alleges that he was competent at the first trial and that the trial court's conclusion that he was under the influence of drugs at trial was legally and factually erroneous. Lastly, Nero argues that his trial counsel's motion for a mistrial and failure to raise a double jeopardy claim at the second trial did not waive his double jeopardy rights since he verbally expressed his objection to the mistral before the trial court.

 The Fifth Amendment's Double Jeopardy Clause[1] protects a defendant against multiple prosecutions or sentences for the same crime. *United States v. Dinitz,* 424 U.S. 600, 606, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976). In a non-jury trial, jeopardy attaches as soon as the trial judge begins to hear evidence. *Douglas v. United States,* 488 A.2d 121, 130 (D.C. 1985). As the mistrial was declared during the defense case-in-chief, jeopardy had already attached in Nero's first trial.

 However, this bar against multiple trials is not absolute. Courts have long held that a new trial is permitted if a

1. "[N]or shall any person be subject for the same offense to be twice put in jeopardy of

life or limb." U.S. Const. amend. V.

trial judge declares a mistrial for "manifest necessity." [2] *Johnson v. United States,* 619 A.2d 1183, 1186 (D.C.1993) (citing *Richardson v. United States,* 468 U.S. 317, 323–26, 104 S.Ct. 3081, 82 L.Ed.2d 242 (1984)). Alternatively, a defendant waives his double jeopardy right and may be retried if he moves for a mistrial. *"Dinitz* and its progeny make clear that absent judicial or prosecutorial goading, a defendant's consent to a mistrial will act as a bar to double jeopardy claims." *Lee–Thomas v. United States,* 921 A.2d 773, 778 (D.C.2007) (citing *Dinitz, supra,* 424 U.S. at 610–11, 96 S.Ct. 1075); *see United States v. Scott,* 437 U.S. 82, 93, 98 S.Ct. 2187, 57 L.Ed.2d 65 (1978); *United States v. Jorn,* 400 U.S. 470, 485, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971); *Speaks v. United States,* 617 A.2d 942, 954 (D.C.1992). It is clear that double jeopardy is not one of the constitutional rights which requires a knowing, voluntary, and intelligent waiver. *Lee–Thomas, supra,* 921 A.2d at 777–78 n. 6 (quoting *Dinitz, supra,* 424 U.S. at 609 n. 11, 96 S.Ct. 1075) (other citations and quotations omitted); *Speaks, supra,* 617 A.2d at 955. However, to be valid, the waiver has to be made by the "defendant." Although other courts have done so, we have not previously considered whether defense counsel can appropriately waive his client's double jeopardy rights over a defendant's objection.

The Supreme Court has examined the decision-making roles of defendants and their court-appointed counsel in criminal cases. In *Jones v. Barnes,* 463 U.S. 745, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983), the court reversed the Second Circuit's conclusion that a defendant has the right to decide what issues are presented in his case. In writing for the majority, Chief Justice Burger opined that giving such broad authority to a defendant "seriously undermines the ability of counsel to present the client's case in accord with counsel's professional evaluation." *Id.* at 751, 103 S.Ct. 3308. The Court explained which decisions must be personally made by a defendant and which are properly vested in defense counsel. A defendant has the "ultimate authority" to make four fundamental decisions: what plea to enter, whether to waive a jury trial, whether to testify, and whether to take an appeal. *Id.* But, it is counsel's role to make all other case-related decisions, after he consults with the defendant. *Id.* at 753 n. 6, 103 S.Ct. 3308. "With the exception of these specified fundamental decisions, an attorney's duty is to take professional responsibility for the conduct of the case, after consulting with his client." *Id.*; *see Florida v. Nixon,* 543 U.S. 175, 187, 125 S.Ct. 551, 160 L.Ed.2d 565 (2004) (explaining that except for the four fundamental decisions, counsel is not required "to obtain the defendant's consent to 'every tactical decision' "); *Kuhn v. United States,* 900 A.2d 691, 700 (D.C.2006) (noting that "the client is not the final arbiter as to the conduct of the defense").

Applying *Jones,* the Supreme Court of Missouri concluded that the decision to move for a mistrial and waive double jeopardy is properly committed to the sound discretion of defense counsel since it is not one of the four fundamental decisions that only the defendant can exercise. *State v. Fitzpatrick,* 676 S.W.2d 831 (Mo.1984). There, appellant argued that he and his counsel disagreed as to whether they should seek a mistrial. *Id.* at 835. The

---

**2.** Courts have held that finding a defendant incompetent to stand trial in the midst of trial is a "manifest necessity" permitting a court to declare a mistrial over a defendant's objections, and allowing a defendant to be retried in a subsequent proceeding. *See Hamm v. Jabe,* 706 F.2d 765, 767–68 (6th Cir.1983).

court explained that whether there was a disagreement is inconsequential because the decision to move for a mistrial properly belongs to counsel. *Id.* at 836–37. It explained that "an accused is bound by his counsel's decision as to trial strategy, unless such decision makes a mockery of the proceedings" and that defense counsel did no more than exercise his professional judgment in evaluating the case and determining the best course of action to take in the particular situation. *Id.* at 836 (quoting *Fry v. State,* 504 S.W.2d 250, 251 (Mo. App.1973)).

Other courts have reached similar conclusions. In *United States v. Bobo,* 586 F.2d 355 (5th Cir.1978), *cert. denied,* 440 U.S. 976, 99 S.Ct. 1546, 59 L.Ed.2d 795 (1979), an appellant claimed that he did not waive his double jeopardy rights because he did not consent to his attorney's motion for a mistrial. In support of his argument, the appellant cited a portion of the Supreme Court's opinion in *Dinitz:* "Traditional waiver concepts have little relevance.... The important consideration, for purposes of the Double Jeopardy Clause, is that the *defendant* retain primary control over the course to be followed in the event of such error." *Id.* at 363–64 & n. 6 (quoting *Dinitz, supra,* 424 U.S. at 609, 96 S.Ct. 1075) (emphasis added). Appellant argued that this language vested the right to move for a mistrial in the defendant personally. *Id.* at 364 n. 6. The Fifth Circuit rejected this claim. "The statement places control with the defendant rather than the *court;* it does not differentiate between the defendant and his counsel. It is common practice to refer to a party and his counsel as a single

entity carrying the name of the party." *Id.* The court held because his counsel moved for a mistrial—even without his consent—appellant's double jeopardy rights were waived since his "personal concurrence is not required." *Id.* at 366; *see Adkins v. Bordenkircher,* 517 F.Supp. 390, 402 (S.D.W.Va.1981), *aff'd,* 674 F.2d 279, 283 (4th Cir.1982) (explaining that "courts ... [have] uniformly held that defendant need not have given personal consent to the motion terminating trial"); *Jeffers v. United States,* 461 F.Supp. 300, 305 (N.D.Ind.1978); *State v. Engleman,* 634 S.W.2d 466, 470 (Mo.1982); *Poretta v. Commonwealth,* 409 Mass. 763, 569 N.E.2d 794, 796 (1991) ("Following the [Supreme] Court's ruling in *Dinitz,* there can be no doubt that the Federal Constitution does not condition the permissibility of retrial on the defendant's personal, explicit assent to a mistrial motion brought by his attorney."); *People v. Ferguson,* 67 N.Y.2d 383, 502 N.Y.S.2d 972, 494 N.E.2d 77, 80–82 (1986) (holding that defense counsel validly waived a double jeopardy claim by assenting to a mistrial when defendant was not consulted or present); *People v. Moore,* 140 Cal.App.3d 508, 189 Cal.Rptr. 487, 490–91 (1983) (holding that the right to move for a mistrial "should and can properly be made by experienced legal minds and is not beyond the control of counsel").

We conclude that the decision to move for a mistrial is within the sound discretion of counsel exercising his professional expertise, and may be made over the objection of a defendant. *See Kuhn, supra,* 900 A.2d at 700. Notwithstanding whether Nero was actually competent to proceed with trial,[3] the decision to move

---

**3.** Defendants also have a due process right not to be tried while they are incompetent. *See Cooper v. Oklahoma,* 517 U.S. 348, 354, 116 S.Ct. 1373, 134 L.Ed.2d 498 (1996); *Drope v. Missouri,* 420 U.S. 162, 95 S.Ct. 896,

43 L.Ed.2d 103 (1975); *Pate v. Robinson,* 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966). Three months prior to trial, the trial court accepted a clinical psychologist's report and concluded that Nero was competent to

for a mistrial was within trial counsel's discretion after a urinalysis revealed that Nero tested positive for PCP while on the witness stand and after both counsel and the trial court observed that Nero was likely under the influence of drugs. By moving for a mistrial, trial counsel effectively waived Nero's claims of double jeopardy and Nero's second trial was proper.[4]

Here, the mistrial was caused because Nero, while on trial for two criminal offenses, tested positive for being under the influence of PCP. His second trial did not violate the Fifth Amendment's Double Jeopardy Clause. Nero's convictions are affirmed.

*So ordered.*

stand trial. However, being under the influence of drugs at trial may render a defendant incompetent. *See Hansford v. United States,* 124 U.S.App. D.C. 387, 390, 365 F.2d 920 (1966). In determining a defendant's competency to stand trial, we consider whether a defendant has "sufficient present ability to rationally consult with his attorney and to factually understand the nature of the proceedings against him." *Phenis v. United States,* 909 A.2d 138, 152 (D.C.2006) (quoting *Clyburn v. United States,* 381 A.2d 260, 263 (D.C.1977), *cert. denied,* 435 U.S. 999, 98 S.Ct. 1656, 56 L.Ed.2d 90 (1978)). Once a defendant is no longer competent to stand trial, due process requires that the trial be halted. *Hamm v. Jabe, supra* note 2, 706 F.2d at 768.

4. Given our holding on this point, we need not decide whether "manifest necessity" would have permitted the trial court to declare a mistrial without a motion by the defense. *But see United States v. Burgess,* No. 89–2391, 1991 U.S.App. Lexis 8491, at *10 (6th Cir. Apr. 29, 1991) (concluding that a defendant's double jeopardy rights were not violated when the second mistrial was the result of his incompetence to stand trial); *Mays v. Smith,* No. 06C0486, 2007 WL 2257572 at *3, 2007 U.S. Dist. Lexis 56978, at *9 (E.D.Wis. Aug. 3, 2007) (citing *Hamm v. Jabe, supra* note 2, 706 F.2d at 767–68) (stating that "where there is a question as to a defendant's competency and the defendant has behaved violently, a judge's decision to declare a mistrial will be upheld"); *State v. Standing Soldier,* 299 N.W.2d 568 (S.D.1980) (holding that defense counsel validly waived a double jeopardy claim by assenting to a mistrial after defendant was found incompetent to stand trial in the midst of trial).