Jorida DAVIDSON, Appellant,

v.

UNITED STATES, Appellee.

No. 12–CO–472.

District of Columbia Court of Appeals.

Argued June 14, 2012.
Decided July 19, 2012.

J. Michael Hannon, Washington, for appellant.

John P. Mannarino, Assistant United States Attorney, with whom Ronald C. Machen Jr., United States Attorney, Roy W. McLeese III, Assistant United States Attorney at the time, and Michael C. Liebman, Assistant United States Attorney, were on the brief, for appellee.

Before FISHER and BLACKBURNE–RIGSBY, Associate Judges, and FARRELL, Senior Judge.

FISHER, Associate Judge:

Invoking the constitutional protection against double jeopardy, appellant Jorida Davidson brings this interlocutory appeal seeking to preclude a second trial for voluntary manslaughter. *See Abney v. United States,* 431 U.S. 651, 662, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977). She also seeks to forestall trial on a new charge of involuntary manslaughter. We conclude that, under the circumstances of this case, a retrial for voluntary manslaughter is not barred. However, because appellant was convicted of negligent homicide, a lesser-included offense, the government may not prosecute appellant for the new charge of involuntary manslaughter based on the same conduct.

## I. Facts

While driving under the influence of alcohol on October 7, 2010, Jorida Davidson struck and killed a pedestrian, Kiela Ryan, with her sport utility vehicle. The grand jury charged appellant with voluntary manslaughter,[1] leaving the scene of a collision involving personal injury,[2] and driving under the influence of alcohol.[3] The indictment did not include a charge of involuntary manslaughter.[4]

---

1. D.C.Code § 22–2105 (2001).

2. D.C.Code § 50–2201.05(a)(1) (2009).

3. D.C.Code § 50–2201.05(b)(1)(A)(i)(II) (2009).

4. During trial, the government requested that the jury be instructed on involuntary manslaughter as a lesser-included offense of voluntary manslaughter. However, citing *Comber v. United States,* 584 A.2d 26, 37 (D.C. 1990) (en banc) ("voluntary and involuntary

A jury trial began on June 7, 2011, and lasted for nine days. At its conclusion, the court instructed the jury on the elements of voluntary manslaughter, as well as the lesser-included offense of negligent homicide.[5] At appellant's request, the court advised the jury that it need only use "reasonable efforts" to reach a verdict on the greater offense of voluntary manslaughter before moving on to consider negligent homicide. *See* Criminal Jury Instructions for the District of Columbia, No. 2.401A (5th ed. rev.2011). On June 21, 2011, after nearly fifteen hours of deliberations, the jurors reported: "We have reached our decision on all three counts."

At 2:16 p.m., the jury entered the courtroom. The court addressed the foreperson:

COURT: Ma'am, has the jury reached a unanimous verdict on each of the counts?

FOREPERSON: Yes.

COURT: I'm going to start with Count 1. How does the jury find the defendant on the charge of manslaughter?

FOREPERSON: We were unable to do so.

COURT: And does that mean that you have not reached any verdict either way on that count, on that charge? Let me ask you the question again. Has the jury reached any verdict on the charge of manslaughter?

FOREPERSON: No.

The jury then proceeded to deliver guilty verdicts for each of the remaining charges, including negligent homicide.[6] The court conducted a poll of the jurors to determine whether they "agree[d] with the verdict as stated by your foreperson," and each juror responded affirmatively. After the poll, the court announced:

Ladies and gentlemen, that does conclude your service in this case. And I do want to thank you for the time that you've put into this process.... I hope you have a very pleasant afternoon. Mr. Dillard will take the verdict form from you and the jury instructions. Thank you very much. You may be excused.

The jury exited the courtroom at 2:19 p.m. Counsel and the court then discussed scheduling matters and whether appellant should be held pending sentencing. The judge concluded by asking whether "there [was] anything further?" to which government counsel responded, "No, Your Honor." Court adjourned at 2:25 p.m.

Two hours later, the trial judge's law clerk sent an e-mail to counsel stating that "the Judge neglected to enter a mistrial as to the Voluntary manslaughter charge this afternoon. She will do so on the court docket so that the record accurately reflects the results as to that charge, unless there is any objection by either party." Defense counsel promptly responded: "I object to the entry of a mistrial on the Voluntary Manslaughter charge, and ob-

---

manslaughter are legally separate offenses"), the court declined.

**5.** D.C.Code §§ 50–2203.01, –.02 (2009).

**6.** The jury indicated its compliance with the "reasonable efforts" instruction by underlining, and double underlining, certain portions of the verdict form: "If you find the defendant guilty of Manslaughter, do not go on to the lesser charge of Negligent Homicide. If you find the defendant not guilty, do go on to consider Negligent Homicide. *And if, after making all reasonable efforts to reach a verdict on the charge of Manslaughter, you are unable to do so,* you may go on to consider Negligent Homicide." The record does not reveal whether the trial judge looked at the verdict form before dismissing the jury.

ject to the implication that Ms. Davidson can be retried on that count."

In the following months, the government moved for entry of a mistrial on the court docket, *nunc pro tunc* to June 21, 2011. It also sought a superseding indictment from the grand jury, which, on July 21, 2011, again charged appellant with voluntary manslaughter. In the superseding indictment, the government added a new count of involuntary manslaughter, arising from the death of Kiela Ryan. After hearing from the parties, the court issued a comprehensive opinion on December 12, 2011, granting the government's motion for entry of a mistrial on the docket and denying appellant's motion to dismiss the superseding indictment.

The trial court "conclude[d] from the entire record that the defense deliberately and for tactical reasons stood silent, calculating that the government, or the court, or both, were failing to make a record that would withstand a double jeopardy challenge to retrial on the manslaughter charge." Under all the circumstances, "the court conclude[d] defendant consented to a mistrial on the charge of voluntary manslaughter. Double jeopardy therefore does not bar retrial on that charge."

## II. Voluntary Manslaughter

### A. Rule 26.3

■ At the outset, we recognize that the trial court failed to abide by the provisions of Super. Ct.Crim. R. 26.3:

> Before ordering a mistrial, the Court shall provide an opportunity for the government and for each defendant to comment on the propriety of the order, including whether each party consents or objects to a mistrial, and to suggest any alternatives.

The Superior Court rule is based on Fed. R.Crim.P. 26.3, which was "designed to reduce the possibility of an erroneously ordered mistrial which could produce adverse and irretrievable consequences." FED.R.CRIM.P. 26.3 advisory committee's note. "The Rule [wa]s not designed to change the substantive law governing mistrials." *Id.* However, "Rule 26.3 recalls to trial judges the critical importance of consultation with counsel[,]" *United States v. Berroa,* 374 F.3d 1053, 1058 (11th Cir. 2004), and that the power to declare a mistrial "ought to be used with the greatest caution." *United States v. Perez,* 9 Wheat. 579, 22 U.S. 579, 580, 6 L.Ed. 165 (1824); *see United States v. Sloan,* 36 F.3d 386, 394 (4th Cir.1994) ("[T]he need for careful consideration of alternatives to mistrial, and the hard lesson of retrials barred by double jeopardy when there was no such consideration, was one of the factors that led to the promulgation of Fed. R.Crim.P. 26.3[.]").

■ There are a variety of circumstances in which a mistrial may be contemplated. "One end of the spectrum, which requires the strictest scrutiny, is the situation where the prosecutor has provoked a mistrial for a tactical advantage." *Coleman v. United States,* 449 A.2d 327, 329 (D.C.1982) (citing *Arizona v. Washington,* 434 U.S. 497, 507–10, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978)). "At the other extreme where there is a dead-locked jury or an issue of possible juror bias, the court's decision should be afforded the greatest deference." *Id.* In the context of an apparently deadlocked jury, consulting with counsel assists the court in protecting the defendant's "valued right to have his trial completed by a particular tribunal." *Carter v. United States,* 497 A.2d 438, 441 (D.C.1985) (quoting *Washington,* 434 U.S. at 503 & n. 11, 98 S.Ct. 824); *see Berroa,* 374 F.3d at 1059 ("The trial judge did not hear from the parties prior to declaring a mistrial. We consider this failure significant, given the mandate of Rule 26.3, and

it strongly suggests that the trial judge did not exercise sound discretion.").

■ Shortly after receiving the jury's verdict, the trial judge thanked the jurors for their service and excused them from the courtroom. The court did not solicit the views of government counsel or defense counsel on the propriety of declaring a mistrial before the jury left, and neither party suggested any possible alternatives to a mistrial. Indeed, the word "mistrial" was not spoken by the court or by counsel. *Cf. United States v. Wecht,* 541 F.3d 493, 499–501 (3d Cir.2008) (outlining "the procedures that district courts should follow prior to declaring a mistrial based on a deadlocked jury").

This is not a situation where it would have been pointless to discuss available alternatives. Based on the jury's note and statements in open court, and the fact that a "reasonable efforts" instruction had been given, it was reasonable for the trial court to conclude that the jury was genuinely deadlocked, and should therefore be excused. *See Epperson v. United States,* 495 A.2d 1170, 1172 (D.C.1985) (discussing considerations in determining whether there is a "hung jury"). But the court might also have sent the jury back for further deliberations on the voluntary manslaughter count. *See Jackson v. United States,* 683 A.2d 1379, 1384 (D.C.1996). Under Rule 26.3, these alternatives should have been evaluated with the input of counsel. Had this occurred, we would have a better record of the considerations which informed the trial court's decision.

■ Nevertheless, "[w]e agree that a violation of Rule 26.3 does not always mean that a mistrial was declared improperly as a matter of constitutional law, and accordingly hold that the remedy for a violation of Rule 26.3 is not automatically the dismissal of the indictment." *Wecht,* 541 F.3d at 504. Without question, "the more prudent course would have been to consult with counsel." *Fuentes v. Commonwealth,* 448 Mass. 1017, 863 N.E.2d 43, 46 (2007) (trial court did not abuse its discretion by dismissing a hung jury and declaring a mistrial without providing counsel an opportunity to be heard). But, as a constitutional matter, the Supreme Court has "never required a trial judge, before declaring a mistrial based on jury deadlock, to force the jury to deliberate for a minimum period of time, to question the jurors individually, to consult with (or obtain the consent of) either the prosecutor or defense counsel, to issue a supplemental jury instruction, or to consider any other means of breaking the impasse." *Renico v. Lett,* —— U.S. ——, 130 S.Ct. 1855, 1864, 176 L.Ed.2d 678 (2010).

Because the violation of Rule 26.3 does not automatically require dismissal of the indictment, we must determine whether a retrial for voluntary manslaughter is barred by the Double Jeopardy Clause.

### B. A Mistrial Occurred

■ Ms. Davidson argues that "there is no evidence that a 'mistrial' actually occurred" because the trial judge discharged the jury without stating that she intended to declare a mistrial. Appellant "errs in suggesting that a[ ] court must articulate the pronouncement of a mistrial using some particular verbal formulation such as 'I declare a mistrial' or 'I order a mistrial.' The case law does not require that." *United States v. Warren,* 593 F.3d 540, 545 (7th Cir.2010). Here the trial court received the jury's verdict, conducted a poll to confirm that all jurors were in agreement, thanked the jurors for their service, and excused them from the courthouse. Although the court did not say "mistrial," its "words and actions in discharging the jury had the effect of 'declaring' a mistrial. . . ." *Id.* "Even if the judge could be

criticized for not orally pronouncing a mistrial using the precise terms 'order' or 'declare,' her actions were certainly the functional equivalent of those terms." *Id.* at 546; *see also Camden v. Circuit Court of Second Judicial Circuit, Crawford County, Ill.*, 892 F.2d 610, 616 n. 7 (7th Cir.1989) ("[T]he discharge and dispersal of the jury rendered the mistrial a *fait accompli.*").

Based on her assumption that no mistrial occurred, appellant also objects to the court's decision to authorize a *nunc pro tunc* docket entry.[7] She claims that action was a nullity because the trial court lost authority over the jury when it was discharged. *See Speaks v. United States*, 617 A.2d 942, 949 (D.C.1992) (per curiam) ("[A] jury ceases to exist as an instrumentality of the justice system once it has been discharged."). Because we conclude that a mistrial occurred when the jury was discharged without returning a verdict, it was not error for the court to update the docket sheet at a later date to reflect that fact. The docket entry does not change what happened, nor does it alter our obligation to examine the record to determine whether appellant's double jeopardy rights would be violated by a new trial.

### C. Mistrials and Double Jeopardy

 The Double Jeopardy Clause[8] "protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense." *United States v. Allen*, 755 A.2d 402, 406 (D.C.2000) (quoting *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969)). However, "[a]n exception to the protections of the Double Jeopardy Clause may be permitted if the trial court declares a mistrial." *Id.* Among the circumstances permitting a retrial, "[t]he classic example is a mistrial because the jury is unable to agree."[9] *Downum v. United States*, 372 U.S. 734, 736, 83 S.Ct. 1033, 10 L.Ed.2d 100 (1963) (citing, among other cases, *Perez*, 22 U.S. at 580).

 "Courts have long held that a new trial is permitted if a trial judge declares a mistrial for 'manifest necessity.' Alternatively, a defendant waives his double jeopardy right and may be retried if he moves for a mistrial." *Nero v. District of Columbia*, 936 A.2d 310, 313–14 (D.C.2007) (quoting *Johnson v. United States*, 619 A.2d 1183, 1186 (D.C.1993)); *see Perez*, 22 U.S. at 580. "It is settled that where the defendant himself has elected to terminate the proceedings against him, the 'manifest necessity' standard has no place in the application of the double jeopardy clause." *In re V.G.E.*, 452 A.2d 1195, 1196 (D.C. 1982) (citing *Oregon v. Kennedy*, 456 U.S. 667, 672, 102 S.Ct. 2083, 72 L.Ed.2d 416

---

7. *See Lebanon Trust & Sav. Bank v. Ray*, 10 Ill.App.3d 345, 293 N.E.2d 623, 626 (1973) (holding that a *nunc pro tunc* order "is solely a device for supplying omissions and to enter of record something actually done," and that it may not "supply omitted judicial action nor correct judicial errors").

8. "[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb...." U.S. Const. amend. V.

9. Appellant does not argue on appeal that the jury's verdict constituted an "implied acquittal" on the voluntary manslaughter charge. *See Price v. Georgia*, 398 U.S. 323, 328–29, 90 S.Ct. 1757, 26 L.Ed.2d 300 (1970). Here, the jury "expressly indicate[d] that it [wa]s unable to reach an agreement on the greater charge," thus "a conviction on a lesser included offense does not constitute an implied acquittal of the greater offense and presents no bar to retrial on the greater offense." *Allen*, 755 A.2d at 408 (quoting *United States v. Bordeaux*, 121 F.3d 1187, 1193 (8th Cir. 1997)).

(1982)). Thus, "when a mistrial is declared with the consent of the defendant or upon his motion, it is 'ordinarily assumed to remove any barrier to reprosecution.'" *Lee–Thomas v. United States*, 921 A.2d 773, 775–76 (D.C.2007) (quoting *Carter*, 497 A.2d at 441 n. 4); *see also United States v. Jorn*, 400 U.S. 470, 485, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971) (plurality opinion).

Moving for a mistrial is not the only way a defendant may consent to the termination of his trial before a final verdict. We have held that "[c]onsent need not be express, but may be implied from the totality of circumstances attendant on a declaration of mistrial." *Anderson v. United States*, 481 A.2d 1299, 1300 (D.C.1984) (per curiam) (quoting *United States v. Goldstein*, 479 F.2d 1061, 1067 (2d Cir.1973)). In *Anderson*, defense counsel asked to approach the bench after a government witness improperly referred to the defendant's alias. *Id.* Counsel complained that the government had failed to properly instruct its witnesses, to which the court responded, "I understand that. I'm afraid I must declare a mistrial." *Id.* at 1301. Defense counsel thanked the trial judge and said nothing further. We noted that "[a]lthough there was no explicit request for a mistrial, defense counsel did not object although she had the opportunity to do so." *Id.* "Based on the totality of the circumstances, we conclude[d] that the defense acquiesced in the declaration of a mistrial" and that the appellant could be retried on that count. *Id.*

 The governing cases use different formulations, sometimes inquiring whether the defendant consented to a mistrial and sometimes emphasizing the importance of an objection from the defendant. *Compare, e.g., Perez*, 22 U.S. at 579 (determining "whether the discharge of the jury by the Court from giving any verdict upon the indictment, with which they were charged, *without the consent* of the prisoner, is a bar to any future trial for the same offence") (emphasis added), *with Washington*, 434 U.S. at 505, 98 S.Ct. 824 ("The prosecutor must demonstrate 'manifest necessity' for any mistrial declared *over the objection* of the defendant.") (emphasis added), *and Sanchez v. United States*, 919 A.2d 1148, 1149 (D.C.2007) ("Retrial of a criminal defendant after a mistrial *over his objection* and unsupported by 'manifest necessity' violates double jeopardy.") (emphasis added). Many courts have blurred this distinction between objection and lack of consent by construing the defendant's failure to object as consent or acquiescence. *See, e.g., United States v. Nichols*, 977 F.2d 972, 975 (5th Cir.1992) ("Nichols' failure to object demonstrates acquiescence."); *cf. United States v. McIntosh*, 380 F.3d 548, 555 (1st Cir.2004) ("To preserve his or her double jeopardy rights, a criminal defendant must object to a mistrial at the time the mistrial is declared."). However, this intellectually unsatisfying approach of construing silence as consent does not apply where there was no opportunity to object. *See United States v. Bates*, 917 F.2d 388, 393 (9th Cir.1990) ("Because Bates and Archer had no opportunity to object, we will not infer that they consented to the mistrial."); *United States v. White*, 914 F.2d 747, 754 (6th Cir.1990) (same).[10]

---

**10.** Contrary to appellant's assertions, "double jeopardy is not one of the constitutional rights which requires a knowing, voluntary, and intelligent waiver." *Nero*, 936 A.2d at 315; *see United States v. Dinitz*, 424 U.S. 600, 609 n. 11, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976). Instead, counsel's statements or actions (or inaction) on behalf of the defendant may be construed as consent to a mistrial. *United States v. Toribio–Lugo*, 376 F.3d 33, 40 (1st Cir.2004) ("[C]onsent may also be implied from a defendant's acts or failures to act,

In *Braxton v. United States,* for example, we concluded that "[t]he failure of counsel to object to the declarations of mistrial [could not], in the circumstances of the trial, be attributed to consent or acquiescence." 395 A.2d 759, 766 (D.C.1978); *see also Jorn,* 400 U.S. at 487, 91 S.Ct. 547 (defense had no opportunity to object to the mistrial). Midway through trial, the judge in *Braxton* unexpectedly declared a mistrial out of frustration with defense counsel's behavior because they had "exhausted my patience." *Id.* at 764. The court cut off counsel's attempts to interject before the jury was dismissed, asserting, "It doesn't call for a comment, sir, it does not." *Id.* There, we concluded that the "[l]ack of objection in these unique circumstances must be attributed to lack of opportunity for objection rather than acquiescence." *Id.*

■ This case is not like *Braxton.* Here, the court's de facto declaration of a mistrial "should have come as no surprise" to defense counsel. *Camden,* 892 F.2d at 617. Before the jurors had even entered the courtroom, the trial judge gathered the parties, read aloud the jury's note that it had "reached [a] decision on all three counts," and informed defense counsel that she "propose[d] to take a verdict." Appellant's counsel asked the court to poll the jurors if a guilty verdict was returned on one of the homicide counts. Appellant thus cannot claim to have been surprised when the jury shortly thereafter announced one of the only three possible results: guilty, not guilty, or unable to decide. *See Camden,* 892 F.2d at 618 ("Defense counsel should have anticipated

the possibility of a mistrial and been prepared to object or suggest more acceptable alternatives when the trial judge announced his ruling.").

Moreover, defense counsel's legal strategy anticipated that the jury might return a verdict without unanimously deciding all the charges. Under an "acquittal first" instruction, the jury must unanimously acquit on the greater charge before considering any lesser-included offenses. *See* Criminal Jury Instructions for the District of Columbia, No. 2.401A (5th ed. rev.2011). But, at Ms. Davidson's request, the jury had been instructed that it need only expend "reasonable efforts" to reach a verdict on voluntary manslaughter before moving on to consider negligent homicide, as it did. (The "reasonable efforts" instruction has been referred to as the "hung jury" instruction. *See Jackson,* 683 A.2d at 1384 n. 11 (citing *United States v. Roland,* 748 F.2d 1321 (2d Cir.1984))). The jury's inability to agree on a greater charge, and its absolution from further efforts to resolve it, are naturally envisioned by an attorney who asks for and receives the "reasonable efforts" instruction.

We need not belabor this point, because appellant's counsel does not claim that he was caught by surprise. At oral argument he assured this court that the trial judge "gave me an opportunity to object to what was happening." Nevertheless, at no point before the jury was discharged did defense counsel object, suggest alternatives, ask for a *Winters* instruction[11] to be delivered, or request that the jury continue its deliberations.

---

such as where the defendant sits silently by and does not object to the declaration of a mistrial even though he has a fair opportunity to do so."). Indeed, in *Nero* we rejected the appellant's claim "that his retrial violated the constitutional prohibition against double jeop-

ardy since he voiced his opposition to his counsel's motion for a mistrial." *Nero,* 936 A.2d at 311.

**11.** *Winters v. United States,* 317 A.2d 530, 534 (D.C.1974) (en banc).

To the contrary, appellant asserts that he had an absolute right to remain silent. In his brief, counsel declares that, "[i]f the issue of a mistrial is not raised by the parties or by the court during trial, there is no reason and no duty for a defendant's counsel to do or say anything." Instead of challenging the trial court's conclusion that he "deliberately and for tactical reasons stood silent," appellant's counsel asserted at oral argument "that defense counsel, when the government allows this to happen, has an obligation, *an obligation,* to do nothing."

We disagree. In circumstances like these, where counsel was not deprived of an opportunity to object, it is fair to expect him to participate in preserving his client's "valued right to have [her] trial completed by a particular tribunal." *Wade v. Hunter,* 336 U.S. 684, 689, 69 S.Ct. 834, 93 L.Ed. 974 (1949). However, "defense counsel did not object although [ ]he had the opportunity to do so[,]" *Anderson,* 481 A.2d at 1301, and "our review of the record indicates that defense counsel expressed no interest in obtaining a verdict from the first jury." *Id.*

Under these circumstances, where a "reasonable efforts" instruction was explicitly requested by counsel, where the jury, so instructed, announced that it was unable to reach a verdict on the greater offense, and where counsel had an opportunity to object to a mistrial, "consent may be implied from [appellant's] failure to object to the [ ] court's dismissal of the jury." *United States v. Ham,* 58 F.3d 78, 83 (4th Cir.1995).[12] The Double Jeopardy Clause thus does not bar a retrial of appellant on the voluntary manslaughter count. *Lee–Thomas,* 921 A.2d at 775.[13]

### III. Prosecution for Involuntary Manslaughter

■■■ Appellant was tried for, and convicted of, negligent homicide. Following her conviction, the government filed a superseding indictment charging her with involuntary manslaughter, a separate offense from voluntary manslaughter, based on the same fatal collision. Because the jury returned a verdict on the negligent homicide count, we conclude that the Double Jeopardy Clause of the Fifth Amendment shields Ms. Davidson from facing a subsequent prosecution for involuntary manslaughter arising from the same conduct.

■■■ "[T]he Fifth Amendment Double Jeopardy Clause safeguards a defendant from multiple trials or successive prosecutions or multiple punishments for the same offense." *Allen,* 755 A.2d at 406. Whether two infractions constitute "the same offense" is determined in the first instance by the legislature through the language of

---

**12.** A similar situation occurred in *United States v. Ham,* 58 F.3d 78 (4th Cir.1995). There, the appellate court concluded that double jeopardy did not bar retrial of a forfeiture charge, even though the jury was dismissed without having returned a verdict on that count. It concluded: "The record in this case shows that, after the clerk read the verdict and the defendants polled the jury, the district judge thanked the members of the jury for their time and effort, apologized for their inconvenience, and wished them a Happy Easter. With these short remarks, the district judge was clearly dismissing the jury. Swami's counsel could have interrupted the judge before he discharged the jury and re-

minded him that the jury had not completed the forfeiture phase of the trial. If Swami had wanted the original jury to decide the Rule 31(e) forfeiture issue, he should have informed the court of this desire before it dismissed the jury." *Id.* at 84.

**13.** As mentioned above, "[t]he manifest necessity test does not apply when the defendant has requested or effectually consented to the mistrial." *United States v. DiPietro,* 936 F.2d 6, 9 (1st Cir.1991) (footnote omitted); *see also In re V.G.E.,* 452 A.2d at 1196. We therefore do not reach this issue.

the criminal statutes. *Byrd v. United States,* 598 A.2d 386, 388–89 (D.C.1991) (en banc); *see also Brown v. Ohio,* 432 U.S. 161, 165, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977) ("The legislature remains free under the Double Jeopardy Clause to define crimes and fix punishments; but once the legislature has acted courts may not impose more than one punishment for the same offense and prosecutors ordinarily may not attempt to secure that punishment in more than one trial.").

We use the test outlined in *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), as a guide in determining whether the legislature intended for violations of separate provisions to constitute the same offense under the Double Jeopardy Clause. *Pelote v. District of Columbia,* 21 A.3d 599, 604 (D.C. 2011); *see* D.C.Code § 23–112 (2001) (codifying *Blockburger* for purposes of permitting consecutive sentences).[14] Applying *Blockburger,* the Supreme Court has held that a lesser-included offense is considered to be the "same offense" as a greater offense for double jeopardy purposes. *Brown,* 432 U.S. at 169, 97 S.Ct. 2221. "Whatever the sequence may be, the Fifth Amendment forbids successive prosecution and cumulative punishment for a greater and lesser included offense." *Id.* Thus, in *Brown,* the Court held that "the Double Jeopardy Clause of the Fifth Amendment bars prosecution and punishment for the crime of stealing an automobile following prosecution and punishment for the lesser

included offense of operating the same vehicle without the owner's consent." *Id.* at 162, 97 S.Ct. 2221.

■ As the government points out, "[u]nder the elements test of *Blockburger* ..., involuntary manslaughter and negligent homicide are presumptively different offenses, because each requires proof of an element that the other does not."[15] Nevertheless, *Blockburger* operates as a tool for determining legislative intent, "not a 'conclusive presumption of law.'" *United States v. Mahdi,* 598 F.3d 883, 888 (D.C.Cir.2010) (quoting *Garrett v. United States,* 471 U.S. 773, 779, 105 S.Ct. 2407, 85 L.Ed.2d 764 (1985)); *accord, Pelote,* 21 A.3d at 604. "The *Blockburger* test is a 'rule of statutory construction,' and because it serves as a means of discerning [legislative] purpose the rule should not be controlling where, for example, there is a clear indication of contrary legislative intent." *Albernaz v. United States,* 450 U.S. 333, 340, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981); *accord, United States v. McLaughlin,* 164 F.3d 1, 8 (D.C.Cir.1998).

In this case, we have a "clear indication of contrary legislative intent" expressed by the Council in D.C.Code § 50–2203.02 (2009). Section 50–2203.02 states unambiguously:

The crime of negligent homicide defined in § 50–2203.01 *shall be deemed to be included* within every crime of manslaughter charged to have been commit-

---

14. This test examines "whether each provision requires proof of a fact which the other does not." *Blockburger,* 284 U.S. at 304, 52 S.Ct. 180. *Blockburger* focuses on a crime's elements: "[T]he court looks at the statutorily-specified elements of each offense and not the specific facts of a given case as alleged in the indictment or adduced at trial." *Byrd,* 598 A.2d at 389. By definition, a lesser-*included* offense does not require proof of an element not contained in the greater offense.

15. Negligent homicide requires proof that the defendant operated a motor vehicle, which involuntary manslaughter does not, and involuntary manslaughter requires a more elevated *mens rea* than negligent homicide. *Compare Strozier v. United States,* 991 A.2d 778, 790 (D.C.2010) (elements of involuntary manslaughter), *with Stevens v. United States,* 249 A.2d 514, 514–15 (D.C.1969) (elements of negligent homicide).

ted in the operation of any vehicle, and in any case where a defendant is charged with manslaughter committed in the operation of any vehicle, if the jury shall find the defendant not guilty of the crime of manslaughter such jury may, in its discretion, render a verdict of guilty of negligent homicide.

(Emphasis added.) Thus, despite the different statutory elements of the crimes viewed in the abstract, the Council has mandated that negligent homicide is, by law, a lesser-included offense of every manslaughter committed in the operation of a vehicle.

The government concedes, as it must, that § 50–2203.02 "precludes coexisting convictions or sentences for both involuntary manslaughter and negligent homicide where only a single victim is involved." *See Brown v. United States,* 576 A.2d 731, 734 (D.C.1990) ("We begin with the fundamental principle that convictions on both a greater offense and a lesser-included offense cannot stand, since by definition the greater offense includes all of the elements of the lesser-included offense."). The government nevertheless maintains that, even though the Council clearly intended § 50–2203.02 to preclude coexisting convictions, it did not intend the statute to preclude successive prosecutions.

We do not discern such an incongruous intent from the words of the statute. The plain language of § 50–2203.02 states that

negligent homicide "shall be deemed to be included" within certain crimes of involuntary manslaughter—those committed in the operation of a vehicle. If the Council had instead created a statutory crime of "involuntary manslaughter committed in the operation of a vehicle," it is clear that negligent homicide would be a lesser-included offense of that crime, as the only difference between the offenses would be the elevated *mens rea* required for involuntary manslaughter. "It is doubtful that [the Council] could have imagined that so formal a difference in drafting had any practical significance, and we ascribe none to it." *Whalen v. United States,* 445 U.S. 684, 694, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980).[16] We therefore conclude that the Council intended negligent homicide to be a lesser-included offense of "involuntary manslaughter committed in the operation of a vehicle."

The Supreme Court has, for decades, interpreted similar legislative schemes, creating greater and lesser-included offenses, as intending to preclude both coexisting convictions and successive prosecutions. *See Brown,* 432 U.S. at 166, 97 S.Ct. 2221 ("Where the judge is forbidden to impose cumulative punishment for two crimes at the end of a single proceeding, the prosecutor is forbidden to strive for the same result in successive proceedings."); *see also United States v. Dixon,* 509 U.S. 688, 704, 113 S.Ct. 2849, 125

---

**16.** The Supreme Court addressed a similar situation in *Whalen* when interpreting the District of Columbia's felony murder statute for double jeopardy purposes. At that time, the statute identified six different felonies, such as robbery and rape, which could serve as a predicate for felony murder. Thus, a defendant did not have to commit rape in order to be guilty of felony murder. Nevertheless, the Court concluded that rape was a lesser-included offense of killing a person in the course of rape (*i.e.,* felony murder). 445 U.S. at 694, 100 S.Ct. 1432.

The Court was "unpersuaded that this case should be treated differently from other cases in which one criminal offense requires proof of every element of another offense. There would be no question in this regard if Congress, instead of listing the six lesser included offenses in the alternative, had separately proscribed the six different species of felony murder under six statutory provisions. It is doubtful that Congress could have imagined that so formal a difference in drafting had any practical significance, and we ascribe none to it." *Id.*

L.Ed.2d 556 (1993) (holding that the Double Jeopardy Clause does not have two different meanings in the contexts of successive punishment and successive prosecution). We read § 50–2203.02, declaring negligent homicide to be a lesser-included offense of involuntary manslaughter committed with a vehicle, as evincing the same intent to bar successive prosecutions.

Because the Council of the District of Columbia intended for negligent homicide and involuntary manslaughter committed in the operation of a vehicle to constitute "the same offense" under the Double Jeopardy Clause, the government may not seek to prosecute appellant for involuntary manslaughter following her conviction for negligent homicide.[17]

## IV. Conclusion

For the foregoing reasons, we hold that Ms. Davidson may be retried on the count of voluntary manslaughter, but may not be prosecuted for the new charge of involuntary manslaughter. We remand for further proceedings consistent with this opinion.

*It is so ordered.*

---

17. Under § 50–2203.02, negligent homicide is also a lesser-included offense of voluntary manslaughter, a separate offense from involuntary manslaughter. *See Comber v. United States*, 584 A.2d 26, 37 (D.C.1990) (en banc) ("voluntary and involuntary manslaughter are legally separate offenses"). We have concluded, however, that appellant may be retried for voluntary manslaughter, despite the conviction for negligent homicide. "The basis for this distinction lies in the concept of 'continuing jeopardy.' Whereas an acquittal terminates jeopardy, a properly granted mistrial does not.... As long as the defendant remains in jeopardy, the government may retry him or her without violating the constitutional prohibition against successive prosecutions." *Allen*, 755 A.2d at 407 (citing *Richardson v. United States*, 468 U.S. 317, 325, 104 S.Ct. 3081, 82 L.Ed.2d 242 (1984); *Blockburger*, 284 U.S. at 304, 52 S.Ct. 180). Involuntary manslaughter was not charged in the first indictment, so appellant has never been in jeopardy for that offense. Thus, with respect to involuntary manslaughter, the concept of "continuing jeopardy" cannot obviate appellant's reliance on *Brown v. Ohio;* 432 U.S. at 162, 97 S.Ct. 2221.